AMERICANS UNITED FOR SEPARA-
TION OF CHURCH AND STATE et al.,
Plaintiffs-Appellees,

v.

Newell J. PAIRE, as Commissioner of Ed-
ucation of the State of New Hamp-
shire, et al., Defendants-Appellants.

No. 72-1353.

United States Court of Appeals,
First Circuit.

Argued Jan. 5, 1973.

Decided March 16, 1973.

Howard B. Myers, Asst. Atty. Gen.,
with whom Warren B. Rudman, Atty.
Gen., was on brief, for appellants.

Walter C. Wright, with whom Ken-
neth E. Scott, Washington, D.C., was on
brief, for appellees.

Before ALDRICH, McENTEE and
CAMPBELL, Circuit Judges.

CAMPBELL, Circuit Judge.

This is an appeal from a district
court decision, 348 F.Supp. 506, that a
lease and so-called dual enrollment
agreement between the Holy Infant Je-
sus School of the Roman Catholic Bishop
of Manchester ("Holy Infant") and the
Nashua School District No. 42 (the "Na-
shua School District") violate the Estab-
lishment Clause of the First Amend-
ment. Because we conclude that a sin-
gle district judge was without jurisdic-
tion to decide the matter, we do not
reach the merits but remand for further
proceedings.

The plaintiffs-appellees (hereinafter
"plaintiffs") are a non-profit corpora-
tion chartered in the District of Colum-
bia (with many of its members residing
in New Hampshire), and twelve individ-
uals who are New Hampshire citizens,
residents and taxpayers. Seven of the
latter are Nashua residents; five reside
in other New Hampshire cities and
towns. All allege that they regularly pay
"local and state taxes, which in turn sup-
port public school districts throughout
the state." They purport to sue not only
individually but as class representatives
for all citizens, residents and taxpayers
similarly situated who are interested in
or affected by the subject matter.

The defendants-appellants (hereinafter "defendants") are the New Hampshire Commissioner of Education, the State Treasurer, and the Chairman of the Board of Education of Nashua School District No. 42. All three defendants are represented by an assistant attorney general of the State of New Hampshire. The Roman Catholic Bishop of Manchester, New Hampshire, was permitted to intervene.

The complaint, a stipulation, and the district court's opinion show a full-scale assault, on constitutional grounds, upon a form of school aid extended by the State of New Hampshire pursuant to statutory enactments and regulations of its Department of Education. Specifically challenged are a lease and written agreement relating to the 1971–72 school year under which the Nashua School District rents from Holy Infant five contiguous classrooms and an office on the second floor of the building of the Holy Infant Jesus School. Therein, through teachers in its exclusive employ, the Nashua School District conducts classes in secular subjects for the benefit of students enrolled at the Holy Infant.[1] Funds for rental of the rooms and for the cost of teachers' salaries, textbooks, and other costs are provided by the state.

The plaintiffs in substance allege, and it was stipulated, that the contractual relations between Holy Infant and the Nashua School District are "typical of contracts entered into between other church schools and other school districts in the State of New Hampshire." The Nashua lease and contract are drawn in strict and obvious compliance with detailed regulations promulgated by the New Hampshire State Department of Education ("Guidelines for Applying for Dual Enrollment and Child Benefit Services Grants." 6/12/70; "Added Guidelines," 1/26/71; "Additional Guidelines," 5/10/71; and "Dual Enrollment Program Instructions, 1971–72," 8/13/71).[2] These latter were, in turn, promulgated under authority of two New Hampshire statutes.[3] The Nashua

---

1. Holy Infant Jesus School is a Roman Catholic parochial elementary school. Its students attending the classes conducted by the Nashua School District also spend part of the day attending classes in other subjects given by the nine nuns who make up Holy Infant's own faculty. The courses given by the Nashua School District at Holy Infant are Language Arts, Science, Math, Music and Physical Education. All students enrolled in the program attend Holy Infant.

2. The Nashua dual enrollment agreement and lease both recite that they are authorized by NH RSA 193:1–2 (supp).

3. NH RSA 193:1–a (supp) Dual Enrollment. Notwithstanding any other provision of the law, the full-time attendance requirement may be met by attendance at more than one school provided the total time spent in the schools is equivalent to full-time attendance and further that the attendance at more than one school may include attendance at a nonpublic school provided that the school district and the state board of education have given prior approval to the detailed dual enrollment agreement, which is to be effectuated for this purpose.

NH RSA 198:21 (supp) Grants.

I. Any school district which has in operation an approved dual enrollment agreement under the provisions of RSA 193:1–a shall be granted for the first school year that such agreement is in operation the full operational costs of implementing such agreement, exclusive of any part of the cost and carrying charges of any capital improvements; and for the next succeeding school year, if such operation is then continued, one half of such costs.

II. Application for any such grant shall be submitted by a district to the state board of education no later than the July first preceding the start of the school year for which it shall be applicable, provided that the board may, for good cause shown, accept any such application up to but not later than the start of the applicable school year.

III. The board shall determine what costs shall be allowed in computing the amount of any grant, and shall make payments of such grants from the funds appropriated therefor.

IV. In the event that for any year insufficient sums are available to pay grants in full as provided by this section to all

School District has applied to the New Hampshire Department of Education, on forms prepared by the state, for a Dual Enrollment grant to cover the costs made reimbursable under the statute and implementing regulations.

It is both apparent and undisputed that the Nashua agreement and lease were prepared to take advantage of the statewide grant program, the latter having been established and funded by the legislature and implemented by regulations of general application put out by the state Board of Education. Thus the question of the constitutionality of the Nashua agreement and lease cannot be separated from the question of the constitutionality of New Hampshire's statutory and regulatory scheme. If the former are unconstitutional, so are the latter, at least as applied to church schools.[4]

Given these facts, and the further fact that the plaintiffs pray for broad, permanent injunctive relief against the two state defendants which would prevent them from any further expenditure of funds under dual enrollment agreements and from further performance either under the Nashua agreement or similar agreements, we are faced with a jurisdictional problem under 28 U.S.C. § 2281, providing:

"An interlocutory or permanent injunction restraining the enforcement, operation or execution of any State statute by restraining the action of any officer of such State in the enforcement or execution of such statute or of an order made by an administrative board or commission acting under State statutes, shall not be granted by any district court or judge thereof upon the ground of the unconstitutionality of such statute unless the application therefor is heard and determined by a district court of three judges. . . ."

■ The district court recognized the problem, stating in an opinion footnote, "Neither party requested the convening of a three-judge court.[5] At the preliminary pretrial conference, the plaintiffs waived their request for a temporary restraining order." However, the three-judge requirement is jurisdictional; jurisdiction of a case otherwise within § 2281 may not be conferred upon a single judge by consent or waiver. Stratton v. St. Louis S. W. Ry., 282 U.S. 10, 18, 51 S.Ct. 8, 75 L.Ed. 135 (1930); United States v. Griffin, 303 U.S. 226, 229, 58 S.Ct. 601, 82 L.Ed. 764 (1938); United Low Income, Inc. v. Fisher, MD., 470 F.2d 1074 (1st Cir. 1972); Borden Company v. Liddy, 309 F.2d 871, 876 (8th Cir. 1962). *See* Goosby v. Osser, 409 U.S. 512, 522, footnote 8, 93 S.Ct. 854, 861, 35 L.Ed.2d 36 (1973).

A better argument against three-judge jurisdiction might exist were it true that plaintiffs had entirely withdrawn all claim for injunctive relief, leaving only a request for declaratory judgment. Kennedy v. Mendoza-Martinez, 372 U.S. 144, 153, 83 S.Ct. 554, 9

---

qualified applying school districts the state board of education shall prorate such grants so that all such districts receive the same proportion.

V. No pupil counted by any school district for the purpose of calculating the amount of a grant to be paid pursuant to this section shall for the same school year by the same district be included in average daily membership for the purposes of foundation aid or counted for the purposes of grants pursuant to RSA 198:22.

4. The district court stated: "Although the stipulation does not expressly so state, Roman Catholic schools are the only church schools in the state to enter into such agreements with the school districts." The court further stated that the "dual enrollment statute, the guidelines promulgated pursuant to it . . . are the direct result of the current financial crisis in Roman Catholic grammar and high school education . . . ."

5. While we accept the district court's statement that no request was made, we note that the plaintiffs refer in their complaint to § 2281 as being one of the statutes under which jurisdiction is claimed.

L.Ed.2d 644 (1963); Flemming v. Nestor, 363 U.S. 603, 607, 80 S.Ct. 1367, 4 L.Ed.2d 1435 (1960). At least if the relief sought, by whatever name denominated, merely called into question the constitutionality of a state statute or regulation but "did not seek affirmatively to interdict the operation of a statutory scheme" (Flemming v. Nestor, *supra* at 607, 80 S.Ct. at 1371), our analysis would be different.

Here, however, we are faced precisely with an attempt to interdict a statewide statutory scheme. While the plaintiffs waived their request for preliminary injunctive relief, they have not waived their request for permanent injunctive relief against both the Nashua program and other similar ones. In its opinion, the district court said:

> "Although the plaintiffs originally asked for a preliminary injunction, they agree that if this opinion were not issued prior to the start of the school year, they would not seek an *immediate injunction* but would wait for the case to run its appellate course. No injunction will issue, therefore, *pending appeal*. If no appeal is taken, the Clerk is directed to schedule an early conference of counsel so that the judgment of this court can be put into effect without jeopardizing unduly the education of the children already involved in the dual enrollment agreement for the current school year." [Emphasis supplied.]

In due course, we may assume that the district court, if its decision were to be affirmed, would issue an injunction, at least in the absence of a suitable stipulation of voluntary compliance. We see no way to avoid the conclusion that the object of the lawsuit remains the effective disruption of the enforcement by a state of its statutes and of regulations promulgated thereunder. *See* Spencer v.

Kugler, 454 F.2d 839, 844 (3rd Cir. 1972).

In Flast v. Cohen, 392 U.S. 83, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968), three-judge jurisdiction was sustained in a case involving attack upon federal funding of instruction and educational materials for use in religious and sectarian schools. The argument against three-judge jurisdiction was that appellants wished to forbid only specific local programs in New York City religious schools, not to enjoin the operation of the broad range of programs available under the federal statutory scheme. The Court held, however, that allegations in the complaint making specific reference to New York City schools were to impart "specificity and focus to the issues in the lawsuit", not to limit the impact of the constitutional challenge. *Id.* at 89, 88 S.Ct. at 1947.

> "The injunctive relief sought by appellants is not limited to programs in operation in New York City but extends to any program that would have the unconstitutional features alleged in the complaint. Congress enacted § 2282 [the federal counterpart of § 2281] 'to prevent a single federal judge from being able to paralyze totally the operation of an entire regulatory scheme . . . by issuance of a broad injunctive order'. . . . [6] If the District Court in this case were to rule for appellants on the merits of their constitutional attack on New York City's federally funded programs, that decision would cast sufficient doubt on similar programs elsewhere as to cause confusion approaching paralysis to surround the challenged statute. Therefore, even if the injunction which might issue in this case were narrower than that sought by appellants, we are satisfied that the legislative policy underlying § 2282 was served. . . ." *Id.* at 89–90, 88 S.Ct. at 1947.

6. The commendable restraint of the district court, in the present case, in withholding relief until after appeal, while removing the paralysis-by-one-judge worry, does not

cure the jurisdictional problem. Moreover, § 2281, of course, affords not only a three-judge district court but a direct appeal therefrom to the Supreme Court.

The district court states, it is true, that the plaintiffs do not challenge the constitutionality of the New Hampshire statutes but "have concentrated their attack on the lease and dual enrollment agreement." (A similar distinction could have been drawn between Titles I and II of the Elementary and Secondary Education Act of 1965 considered in *Flast, supra,* and the limited program there attacked.) The New Hampshire statutes must be read, however, with the regulations of the Department of Education [7] and the Nashua lease and agreement (which are stipulated to be typical of contracts entered into by other church schools and school districts and which are plainly drawn in compliance with the statutes and regulations). So read, they delineate a specific state policy; it is against the enforcement of that policy, not merely against a locally-drawn contract, that the plaintiffs seek to interpose the Constitution. *See* Phillips v. United States, 312 U.S. 246, 251, 61 S.Ct. 480, 85 L.Ed. 800 (1941). We would be fooling no one, not even ourselves, were we to pretend otherwise. The possibility of so attempting is furthermore removed by the breadth of the plaintiffs' allegations and prayers, by the stipulation, and by the obvious fact, appearing from every page of the lease and dual-enrollment agreement, that what is sought to be prevented is a major state program, authorized and funded by the legislature, and executed by state officers, two of whom are defendants.

We conclude that the district court, consisting of a single judge, was without jurisdiction to hear and resolve the issue before it. Since it was without jurisdiction, we are without jurisdiction to resolve the substantive issues on appeal. The judgment of the district court is vacated, and the case remanded for reference to a district court of three judges.

So ordered.

---

7. For purposes of § 2281, the regulations of the Department of Education are the "delegated legislation of an 'administrative board or commission'." *See* Phillips v. United States, *supra* at 251, 61 S.Ct. 480.