**Claire MURROW et al., Appellants,**

**v.**

**Robert L. CLIFFORD, Individually and as Commissioner of the Department of Institutions and Agencies, his successors in office, agents and employees.**

**No. 73-1717.**

United States Court of Appeals, Third Circuit.

Argued March 15, 1974.

Decided May 30, 1974.

As Amended Oct. 10, 1974.

Murray J. Klein, Kenneth E. Meiser, Peter J. O'Connor, Carl S. Bisgaier, Camden Regional Legal Services, Inc., Camden, N. J., for appellants.

William F. Hyland, Atty. Gen. of N. J., Stephen Skillman, First Asst. Atty. Gen., Joan M. Murphy, Deputy Atty. Gen., Trenton, N. J., for appellees.

Before ALDISERT, GIBBONS and ROSENN, Circuit Judges.

## OPINION OF THE COURT

GIBBONS, Circuit Judge.

This appeal brings before us the recurring contention that an aspect of state administration of a public assistance program conflicts with the Social Security Act and with the equal protection clause of the fourteenth amendment. In a class action the plaintiffs claim to represent a class of women who have been medically determined to be pregnant and who (1) have applied for benefits under the Aid to Families with Dependent Children (AFDC) program, 42 U.S.C. §§ 601–610, for the first time for themselves and the fetus *in utero,* or (2) are receiving AFDC benefits with respect to other children and have applied for an extra AFDC grant solely for the fetus. In New Jersey all such applications have been rejected. The plaintiffs' complaint alleged jurisdiction solely under 28 U.S.C. § 1343 and the district court sustained jurisdiction over the equal protection claim under § 1343(3). It also held that it had jurisdiction over the statutory supremacy clause claim by virtue of 28 U.S.C. § 1343(4). The omission of an allegation of jurisdiction under 28 U.S.C. § 1331 undoubtedly reflected the conceded fact that no claim of any class member would reach the $10,000 jurisdictional minimum and that the claims could not be aggregated. Zahn v. International Paper Co., 414 U.S. 291, 94 S.Ct. 505, 38 L.Ed.2d 511, (1973); Snyder v. Harris, 394 U.S. 332, 89 S.Ct. 1053, 22 L.Ed.2d 319 (1969). We will assume, on the authority of 28 U.S.C. § 1653, that the plaintiffs assert pendent jurisdiction over the supremacy clause

claim. Without requesting the convening of a three-judge district court, the district judge held a single hearing pursuant to Rule 65(a)(2) of the Federal Rules of Civil Procedure on plaintiffs' application for preliminary and permanent injunctive relief. Two equal protection claims are made. One is that the state is denying equal protection to the fetus *in utero*. The other is that the state is denying equal protection to the pregnant women by denying AFDC benefits to them with respect to the fetus *in utero*. The statutory claim is that the Social Security Act definition of dependent child in 42 U.S.C. § 606 (a) [1] makes a "child" *in utero* eligible, and that the state interpretation of its own regulations conflicts with the statutory definition of eligibility.[2] The district court ruled on both the equal protection and the statutory supremacy clause claims in favor of the state defendants, and the plaintiffs appeal.

■ We agree with the district court that one of the equal protection claims was sufficiently substantial to confer subject matter jurisdiction under 28 U.S.C. § 1343(3). The test of substantiality sufficient to confer federal question subject matter jurisdiction has recently been reiterated in Hagans v. Lavine, 415 U.S. 528, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974). To be jurisdictionally insubstantial a claim must be so attenuated and unsubstantial as to be absolutely devoid of merit, or clearly foreclosed by the decisions of the Supreme Court so as to leave no room for the inference that the questions sought to be raised can be the subject of controversy. Applying that test, we can say that a fourteenth amendment claim

advanced on behalf of the fetus *in utero* is precluded by the *ipse dixit* in Roe v. Wade, 410 U.S. 113, 156–159, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973), that for purposes of the amendment a fetus is not a person. But the benefits under the AFDC program are not paid to eligible dependent children, but to eligible relatives with respect to dependent children. The pregnant class members are persons, and they claim that their exclusion from eligibility denies them equal protection. That claim meets the substantiality test set forth in Hagans v. Lavine, *supra*.

The district court's ruling that 28 U.S. C. § 1343(4) affords federal question jurisdiction over statutory supremacy clause claims without regard to jurisdictional amount is at least open to serious question. *See* Hagans v. Lavine, *supra*, 415 U.S. at 533 n. 5, 94 S.Ct. 1372; *cf.* Rosado v. Wyman, 397 U.S. 397, 405 n. 7, 90 S.Ct. 1207, 25 L.Ed.2d 442 (1970); King v. Smith, 392 U.S. 309, 312 n. 3, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1968). But assuming an equal protection clause claim substantial enough to support federal question jurisdiction under 28 U.S.C. § 1343(3), there was pendent jurisdiction over the statutory supremacy clause claim, which was, as has been recently made clear, a preferred ground for decision. Hagans v. Lavine, *supra*, 415 U.S. at 542, 94 S.Ct. 1372. Thus there is no doubt that the district court had jurisdiction to decide the statutory supremacy clause claim.

■■ There is, however, a significant difference between the posture of this case and the posture in which Hagans v. Lavine reached first the Second Circuit, in Hagans v. Wyman, 471 F.2d 347 (2d Cir. 1973), and ultimately the

---

1. That statute provides:

 "The term 'dependent child' means a needy child (1) who has been deprived of parental support or care by reason of the death, continued absence from the home, a physical or mental incapacity of a parent, and who is living with his . . . mother [or other relative] . . . in a place of residence maintained by . . . such [relative] . . ., and (2) who is (A) under the age of eighteen . . . .."

2. If a state elects to participate in the AFDC program, its definition of eligibility must conform to the federal statute. Carleson v. Remillard, 406 U.S. 598, 92 S.Ct. 1932, 32 L.Ed.2d 352 (1972); Townsend v. Swank, 404 U.S. 282, 92 S.Ct. 502, 30 L.Ed.2d 448 (1971); King v. Smith, 392 U.S. 309, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1968).

Supreme Court. There the single district judge found that the equal protection claim was sufficiently substantial to confer federal question jurisdiction under § 1343(3) to which the statutory supremacy clause claim could be pendent. But because the single district judge sustained plaintiffs' supremacy claim, over which he had undoubted jurisdiction under Swift & Co. v. Wickham, 382 U.S. 111, 86 S.Ct. 258, 15 L.Ed. 2d 194 (1965), he had no occasion to pass upon the equal protection claim. Appellate review properly proceeded by way of the Court of Appeals and on certiorari in the Supreme Court. Mengelkoch v. Industrial Welfare Commission, 393 U.S. 83, 89 S.Ct. 60, 21 L.Ed.2d 215 (1968). Here, because the single district judge rejected the statutory supremacy clause claim, he was faced with the need for disposition of the equal protection claim. Instead of requesting a three-judge court pursuant to 28 U.S.C. §§ 2281–2284, he decided that question. But while it is clear that he had jurisdiction to decide the supremacy claim and we have jurisdiction to review such a decision, Swift & Co. v. Wickham, supra, it is equally clear that a decision denying an injunction against a state regulation of statewide application on equal protection grounds, except where the claim is so insubstantial as to be outside the subject matter jurisdiction of a federal court, is beyond the power of a single district court. Such a decision must be made by a three-judge district court, Hagans v. Lavine, supra, 415 U.S. at 542, 94 S.Ct. 1372, and appeal lies to the Supreme Court rather than here. 28 U.S.C. § 1253. We can however, and indeed must, vacate the final judgment and direct the district court to convene a three-judge district court. E.g., Mengelkoch v. Industrial Welfare Commission, supra; Americans United for Separation of Church & State v. Paire, 475 F.2d 462, 466 (1st Cir. 1973); McMillan v. Board of Education, 430 F.2d 1145, 1150 (2d Cir. 1970); see Goosby v. Osser, 409 U.S. 512, 522, 93 S.Ct. 854, 35 L.Ed.2d 36 (1973). Since the equal protection part of the decision is void, the statutory supremacy clause decision is interlocutory. It is, however, within our statutory appellate jurisdiction as an appeal from the denial of an injunction. 28 U.S.C. § 1292(a)(1).

A review and rejection of the statutory supremacy clause claim in an interlocutory appeal to the court of appeals, and the possible affirmance of that rejection, poses a difficult problem of sound judicial administration. Indeed the same problem is created by a district court's rejection of the statutory supremacy clause claim in any case in which that claim is joined with a claim growing out of the same operative facts which must be decided by a district court of three judges. The problem is that the court's rejection of the supremacy clause claim and our affirmance of that rejection deprives the three-judge district court of the opportunity to pass upon it, and forces that court to pass upon the constitutional claim. And since appeal from the three-judge district court lies directly to the Supreme Court as a matter of right, it, too, is deprived of the opportunity of deciding the case on statutory supremacy rather than other constitutional grounds.

 In Hagans v. Lavine, supra, 415 U.S. at 545, 94 S.Ct. 1372, the Court held that the rule of decision announced in Siler v. Louisville & Nashville R.R., 213 U.S. 175, 29 S.Ct. 451, 53 L.Ed. 753 (1909) favoring decision of cases involving constitutional issues on pendent state law grounds if constitutional adjudications could thereby be avoided, was also applicable to pendent federal statutory claims implicating the constitution only through the supremacy clause. Any rule which has the effect of requiring the decision of a constitutional issue in order to terminate a lawsuit, without affording the tribunal making the final decision an opportunity to reach a preferred statutory supremacy clause ground and thereby possibly avoid the constitutional issue, is inconsistent with the policy laid down in Hagans v. Lavine,

*supra.* That case makes clear that if a single district court judge believes he should sustain the statutory supremacy claim, the accepted procedure is to decide it on that preferred ground without requesting the convening of a three-judge court, and thereby allow appellate review in the court of appeals. But the same policy which dictates that procedure when he believes the supremacy claim should be sustained dictates the opposite procedure if he is inclined to reject it. The other two members of a three-judge district court might well disagree with him on the supremacy issue, and by deciding in plaintiff's favor on that ground avoid a more serious constitutional adjudication. *See* Judge Winters' opinion in Doe v. Lukhard, 493 F.2d 54 (4th Cir. 1974). We hold, therefore, that it is improper for a single district court judge to decide a supremacy clause claim against the claimant when it is pendent to a constitutional claim which must be decided by a three-judge district court. If he is not going to sustain the supremacy claim he should request the convening of a three-judge court and permit that court to pass upon the entire case.

The judgment of the district court will be vacated and the cause remanded for the convening of a three-judge district court.

ROSENN, Circuit Judge (concurring and dissenting).

We are confronted on this appeal with an intricate issue involving federal three-judge court procedure. The plaintiffs sought preliminary and permanent injunctive and declaratory relief against the enforcement of a state administrative policy denying AFDC benefits to unborn children. They challenged the policy on both "statutory"[1] and constitutional

grounds. Without convening a three-judge court, a single district judge decided both grounds against the plaintiffs and entered judgment for the defendant. Plaintiffs appealed to this court.

The threshold question on this appeal is whether the state's unwritten administrative policy in this case involves "the enforcement or execution of [a] statute or of an order made by an administrative board or commission acting under State statutes" as provided in 28 U.S.C. § 2281. I agree with the implicit conclusion of the majority that it is.[2] I therefore concur in that portion of the majority opinion holding that the single district judge lacked power to deny an injunction against the operation of the state policy on equal protection grounds. It is appropriate, therefore, to vacate that portion of the single judge's decision dealing with the constitutional issue.

I.

I am impelled to dissent, however, from that portion of the majority opinion dealing with the single judge's disposition of the statutory issue. Although pre-1970 Supreme Court decisions would have required this court to vacate *in toto* the judgment of the single judge with directions to convene a three-judge court, *see,* Florida Lime & Avocado Growers, Inc. v. Jacobsen, 362 U.S. 73, 80 S.Ct. 568, 4 L.Ed.2d 568 (1960); Brotherhood of Loc. Engineers v. Chicago, R. I. & P. R. R., 382 U.S. 423, 86 S.Ct. 594, 15 L.Ed.2d 501 (1966), the majority recognizes, quite properly, that under the Supreme Court's decision in Rosado v. Wyman, 397 U.S. 397, 90 S.Ct. 1207, 25 L.Ed.2d 442 (1970) and in Hagans v. Lavine, 415 U.S. 528, 94 S.Ct. 1372, 39 L. Ed.2d 577 (1974), decided after argument in the instant case, a single district judge

---

1. All references herein to the "statutory" claim are to plaintiffs' claim that state policy conflicts with a federal statute and thus is constitutionally invalid under the Supremacy Clause.

2. Farley v. Farley, 481 F.2d 1009 (3d Cir. 1973); Forbush v. Wallace, 341 F.Supp.

217 (M.D.Ala.1971), *aff'd,* 405 U.S. 970, 92 S.Ct. 1197, 31 L.Ed.2d 246 (1972). *Cf.* Doe v. Lukhard, 493 F.2d 54, at 57 n. 4 (4th Cir. 1974). *Contra,* Dorado v. Kerr, 454 F.2d 892 (9th Cir. 1972); Wilson v. Weaver, 358 F.Supp. 1147, 1150 (N.D.Ill. 1973).

has power to decide a non-constitutional ground in favor of the plaintiffs, despite the existence of a constitutional ground that might ultimately require adjudication by a three-judge court.[3] The majority declines to review the district judge's ruling on the merits of the statutory claim, however, holding that "it is improper for a single district court judge to decide a supremacy clause claim *against* the claimant . . . ." (Emphasis supplied). Assuming that this court has appellate jurisdiction over the statutory claim,[4] I dissent, as I do not agree with that portion of the majority opinion holding that it is proper for a single judge to accept, but not reject, plaintiff's statutory claim.

The majority's holding is, in effect, a retreat to the position of *Florida Lime & Avocado Growers* in the face of the clear language of Hagans v. Lavine that

> [t]he latter [the statutory claim] was to be *decided* first and the former not reached if the statutory claim was dispositive.

\* \* \* \* \* \*

It is true that the constitutional claim would warrant convening a three-judge court *and that if a single judge rejects the statutory claim,* a three-judge court must be called to consider the constitutional issue. (Emphasis supplied).

3. In Florida Lime & Avocado Growers, Inc. v. Jacobsen, *supra,* the Court held that the inclusion in the complaint of a non-constitutional ground in addition to a constitutional ground did not permit a single judge to hear a case otherwise appropriate for three judges. *See also* Brotherhood of Loc. Engineers v. Chicago, R. I. & P. R. R., *supra.* In Rosado v. Wyman, *supra,* the complaint alleged both constitutional and non-constitutional grounds. The Court upheld the power of a single judge to adjudicate the non-constitutional ground where, subsequent to the convening of the three-judge court, the constitutional ground became moot. The Court added:

> Even had the constitutional claim not been declared moot, the most appropriate course may well have been to remand to the single district judge for findings and the determination of the statutory claim rather than encumber the district court, at a time when district court calendars are overburdened, by consuming the time of three federal judges in a matter that was not required to be determined by a three-judge court. *See* Swift & Co. v. Wickham, 382 U.S. 111, 86 S.Ct. 258, 15 L.Ed.2d 194 (1965).

397 U.S. at 403, 90 S.Ct. at 1213. In Hagans v. Lavine, *supra,* the Court was presented with the converse of the procedure approved in *Rosado.* Plaintiffs asserted both statutory and constitutional grounds in support of their request for injunctive relief against the operation of a state regulation. Without convening a three-judge court, the single judge granted injunctive relief on the basis of the statutory ground. Citing *Rosado,* the Court approved the procedure, noting that the practice

> may appear at odds with some of our prior decisions. *See.*, *e. g.*, Chicago, R. I. & P. R.

Co., *supra*; Florida Lime & Avocado Growers, Inc. v. Jacobsen, *supra.* But, we think it accurately reflects the recent evolution of three-judge court jurisprudence, "this Court's concern for efficient operation of the lower federal courts" and "the constrictive view of the three-judge court jurisdiction which this Court has traditionally taken." Swift & Co. v. Wickham, *supra,* 382 U.S., at 128, 129, 86 S.Ct. 258. (Citations omitted.)

415 U.S. at 542, 94 S.Ct. at 1382. This aspect of *Hagans* was followed in Shea v. Vialpando, 416 U.S. 251, 94 S.Ct. 1746, 40 L.Ed. 2d 120 (1974).

4. The majority finds appellate jurisdiction under 28 U.S.C. § 1292(a)(1), maintaining that the single judge's ruling on the statutory claim involved an "interlocutory order . . . refusing [an] . . . injunction . . . ."

The issue of this court's appellate jurisdiction under § 1292(a)(1) is not without difficulty. This appeal raises the question of whether a district court's ruling on one of several legal grounds asserted in support of a single claim for which injunctive relief is sought constitutes an interlocutory denial of an injunction within § 1292(a)(1). *See,* United States v. New York, N. H. & H. R. R., 276 F.2d 525 (2d Cir. 1960) (also cited as Glenmore v. Ahern).

Whatever the merits in an ordinary case of allowing an appeal under § 1292(a)(1) from an order adjudicating one ground asserted in support of a single claim for injunctive relief, I am inclined to concur in the conclusion of the majority that an appeal is proper here, particularly as an appeal might avoid decision of a constitutional issue. *See* text *infra,* pp. 11–13.

[415 U.S. at 542, 94 S.Ct. at 1382]. This language contemplates *decision,* not merely consideration, of the statutory claim. Moreover, the Court made no distinction between accepting or rejecting the merits of that claim. Rather, the Court's language clearly contemplates that in some cases the single judge would reject the statutory claim, and then convene a three-judge court to hear the constitutional claim.

The rule proposed by the majority would compel a single district judge to stop short of entering an order when he determines that the statutory claim should not be resolved in favor of the plaintiffs, notwithstanding that he had heard witnesses, compiled a record and laid bare the factual and legal issues of that claim. Such a rule would ultimately encourage rather than restrict utilization of the three-judge court procedure even in cases where the statutory claim on its face appears strong. A single district judge will likely be reluctant to expend any time on the statutory claim and will immediately convene a three-judge court under a rule that compels reconsideration of the statutory claim by the three-judge court if the single judge ultimately determines that the statutory claim must be resolved against the plaintiff. The rule proposed by the majority, therefore, appears seriously inconsistent with the "constrictive view of the three-judge court jurisdiction which [the Su-

preme Court] has traditionally taken." Hagans v. Lavine, *supra.*

While apparently conceding the command of the literal language of *Hagans,* the majority nonetheless concludes that only a three-judge court can properly reject plaintiffs' statutory claim. The basis for the majority's position appears to be its conclusion that the rejection of plaintiffs' statutory claim by a single judge and possible affirmance by the court of appeals may work a result inconsistent with the distinct policy, expressed most recently in Hagans v. Lavine, of avoiding unnecessary adjudication of constitutional questions. This conclusion appears to be premised on the following reasoning. If this court reviews and affirms the single judge's rejection of plaintiffs' statutory claim, the three-judge court convened thereafter will be bound by our decision on the statutory ground and will be forced to decide the constitutional ground. More importantly, the majority concludes, the Supreme Court on appeal from the decision of the three-judge court could similarly review only the constitutional ground and would be "deprived of the opportunity of deciding the case on statutory supremacy rather than other constitutional grounds"[5] to terminate the litigation.[6]

A closer examination of the question, however, reveals that a decision by a single district judge rejecting the stat-

---

5. Majority Opinion at 1069.

6. The majority's concern is with the consequences of an appeal taken by plaintiffs from the single judge's adverse ruling on the statutory claim. It should not be overlooked, however, that it may not be in the plaintiffs' best interest to appeal this ruling. This would arise if the plaintiffs had a strong constitutional claim but a weak statutory argument. In that event, plaintiffs might prefer an immediate ruling on the constitutional issue by the three-judge court. Since the ruling of the single judge is interlocutory, plaintiffs may defer their appeal until the final judgment, at which time they could raise issues decided by the interlocutory orders. Victor Talking Machine Co. v. George, 105 F.2d 697 (3d Cir. 1939), cert. denied, 308 U.S. 611, 60 S.Ct.

176, 84 L.Ed. 511 (1939) ; 9 J. Moore, Federal Practice ¶ 100.18 (2d Ed. 1973). If no appeal is taken and a three-judge court immediately convened, I see no reason why, on appeal from the decision of the three-judge court, the Supreme Court could not review the single judge's ruling on the statutory claim.

That the three-judge court would be limited to deciding the constitutional issue if plaintiffs do not appeal does not raise a serious question of "unnecessary adjudication of constitutional questions." Plaintiffs' decision not to appeal will no doubt be a reflection of their judgment as to the weakness of the statutory claim. In such cases, even if the single judge had initially referred the statutory claim to the three judges under the theory of the majority, it is likely that the statutory court would also have rejected that claim.

utory ground, and review of that decision by this court, will not in itself force an unnecessary adjudication of a constitutional question. First, the majority overlooks the possibility that direct appellate review of the single judge's decision may result in a decision on the statutory ground in favor of the plaintiffs. The litigation would then be terminated without the necessity of adjudicating the constitutional question at all.[7]

Second, I recognize that appellate review of the single judge's ruling may result in a decision on the statutory claim against the plaintiffs. This would occur if the Supreme Court granted certiorari and ruled on the statutory claim, rejecting it on the merits. It would also occur if the court of appeals rejected the statutory claim and the Supreme Court denied certiorari. In neither of these cases, however, would there be unnecessary adjudication of constitutional questions.

In the former case, where the Supreme Court rejects the statutory claim on the merits, the Court would remand the case to the single district judge for the convening of a three-judge court to decide the constitutional issue and, on appeal from the decision of the three-judge court, would itself have to decide the constitutional question. However, no *unnecessary* adjudication of constitutional claims would be involved because the constitutional adjudication would be made only *after* the statutory claim had been definitively rejected by the Supreme Court. In the latter case, where the Supreme Court's denial of certiorari allows the court of appeals' rejection of the statutory claim to stand, the Supreme Court, on appeal from a decision by the

three-judge court, would be confronted with a ruling on the constitutional question. However, I am aware of no legal authority that would preclude the plaintiffs from urging the narrower statutory ground as an alternative basis for the Supreme Court's decision in their favor. There is ample authority for the proposition that the Supreme Court's denial of certiorari on a ruling by the court of appeals on issues raised in an interlocutory appeal does not determine "the law of the case" for the Supreme Court on an appeal from the final judgment. Hughes Tool Co. v. Trans World Airlines, Inc., 409 U.S. 363, 93 S.Ct. 647, 34 L.Ed. 2d 577 (1973); Indianapolis v. Chase National Bank, 314 U.S. 63, 62 S.Ct. 15, 86 L.Ed. 47 (1941); Hamilton-Brown Shoe Co. v. Wolf Brothers & Co., 240 U.S. 251, 36 S.Ct. 269, 60 L.Ed. 629 (1916); 9 J. Moore, Federal Practice ¶ 110.25[2] (2d ed. 1973); 1B J. Moore, Federal Practice ¶ 0.404[10], at 574 (2d ed. 1965). Moreover, there is also authority for the Supreme Court's power to decide a case on a ground not relied on in the court below. California Bankers Ass'n v. Shultz, 416 U.S. 21, 71, 94 S.Ct. 1494, 39 L.Ed.2d 812 (1974); United States v. Georgia Public Service Commission, 371 U.S. 285, 287–288, 83 S.Ct. 397, 9 L.Ed.2d 317 (1963).

Even assuming the majority is correct that the Supreme Court under these circumstances would be limited to the constitutional issues considered by the three-judge court, I cannot agree that the approach adopted by the majority solves the problem. The problem, if valid at all, may arise not only when the single district judge rejects the statutory claim, but also when the single district judge *initially* accepts the statutory claim,

---

**7.** This could occur whether this court affirmed or reversed the single district judge's adverse ruling on the statutory question. It could occur where this court affirmed the single district judge's rejection of the statutory question, but where the plaintiffs petitioned the Supreme Court for certiorari, and that Court granted certiorari and reversed this court's affirmance. Similarly, this could occur where this court reversed the single district judge's rejec-

tion of the statutory claim, the defendants petitioned the Supreme Court for certiorari and that Court either denied certiorari or granted certiorari and affirmed this court.

There is also the possibility that the constitutional question might become moot before its adjudication by either the three-judge court or the Supreme Court. *See* Rosado v. Wyman, *supra.*

which the majority clearly permits him to do. If the single district judge were to accept the statutory claim, this court might reverse his ruling, rejecting the statutory claim on the merits. We would then remand for the convening of a three-judge court which would be limited to deciding the constitutional issue. Under the theory of the majority, the Supreme Court, on appeal from the decision of the three-judge court, would likewise be limited to deciding the constitutional issue. The possibility of this result, which led the majority to hold that it was improper for the single district judge to *reject* the statutory claim, should lead the majority to hold that it is equally improper for a single district judge to *accept* the statutory claim.

Therefore, whether the initial decision by the single judge is to accept or reject the statutory claim, the concern expressed by the majority, if valid, may arise. The problem is not a consequence of the single district judge's initial rejection of a statutory claim and our review of the merits of his ruling; it is a consequence of this court's adverse ruling on the statutory claim, whether or not the district judge initially rejected that claim. The problem is inherent even in the power conferred by *Hagans* on a single district judge to accept the statutory claim and is not eliminated by permitting a single district judge to accept but not reject the statutory argument. The rule fashioned by the majority, therefore, draws a distinction without a difference.

I recognize that my conclusion will occasionally result in two separate lines of appellate review, namely an appeal from the single judge to the court of appeals and also a direct appeal from the three-judge court to the Supreme Court.[8]

This results, however, not from the single judge's rejection of the statutory claim, but from the fact that under Hagans v. Lavine, the single district judge is empowered at least to accept the statutory ground. If the single judge decides the statutory claim in favor of plaintiffs, as he is clearly permitted to do under *Hagans*, this might be reversed on appeal to the court of appeals. Absent the Supreme Court's grant of certiorari and reversal of this court, a three-judge court would then have to be convened, with an appeal of its decision on the constitutional claim to the Supreme Court. The fact that the same possibility of two lines of appeal arises when the single judge decides against the plaintiff on the statutory claim should not, therefore, be a bar to such a decision. Moreover, the review process and input of the court of appeals may well prove advantageous to the Supreme Court, especially in view of its concern that direct appeal from a three-judge court "contradicts the dominant principle of having [the Supreme] Court review decisions only after they have gone through two judicial sieves." Swift & Co. v. Wickham, 382 U.S. 111, 128, 86 S.Ct. 258, 15 L.Ed.2d 194 (1965) (citing Justice Frankfurter's dissent in Florida Lime & Avocado Growers, Inc. v. Jacobsen, 362 U.S. 73, 92–93, 80 S.Ct. 568, 4 L.Ed.2d 568). *See also* United States v. Singer, 374 U.S. 174, 175 n. 1, 83 S.Ct. 1773, 10 L.Ed.2d 823 (1962).

## II.

In light of the foregoing discussion, I will briefly discuss my view as to the merits of plaintiffs' statutory claim.

Essentially two rationales are urged to support the contention that a state policy denying AFDC benefits to the unborn is inconsistent with federal law

---

8. Two separate lines of appeal will not *inevitably* result from the single district judge's determination to decide the statutory ground himself. Plaintiffs may well prevail on the merits of the statutory claim. In this event, there will be no litigation on the constitutional question. Even if plaintiffs' statutory claim is initially rejected by the single district judge, plaintiffs may believe that their statutory claim is weak and decide not to postpone adjudication of the constitutional claim by appealing the rejection of the statutory claim. *See* note 6, *supra*. In this event there will be no separate line of appeal on the statutory question.

and therefore invalid under the Supremacy Clause. The first rationale is that inclusion of the unborn in the statutory definition of "dependent child"[9] is not inconsistent with the intent of Congress, as indicated in § 606(a) of the Act and its legislative history, and under Townsend v. Swank, 404 U.S. 282, 92 S.Ct. 502, 30 L.Ed.2d 448 (1971),[10] there is no congressional authorization for state variation from the federal standard of eligibility.[11] Supporters of this rationale point out that the dictionary definition of the word "child" includes the unborn and cite the rule of statutory construction that words used in a statute are to be given their usual and commonly understood meaning, unless it is plain from the statute that a different meaning is intended.

Even assuming that the dictionaries of 1935 when the statute was originally enacted so defined "child,"[11a] I do not consider this general definition to have expressed the understanding and intention of those responsible for enactment of the Social Security Act. An examination of the statutory definition of "dependent child" indicates that Congress was using the word "child" in the context of a *born* child. A "dependent child" is one who is deprived of support or care because of "the death, continued absence from the home, or physical or mental incapacity of a parent" and "who is living with his father, mother, grandfather, grandmother, brother, sister, stepfather, stepmother, stepbrother, stepsister, uncle, aunt, first cousin, nephew, or niece, in a place of residence." By the use of the terms "home" and "place of residence" and the enumeration of the relatives with whom a dependent child might live, Congress must have been contemplating a born child rather than a fetus.

An examination of the other provisions of Title IV, moreover, provides persuasive evidence that Congress did not intend to include the unborn when using the term "child." Only a born child can have the "other income and resources" to which Congress referred in 42 U.S.C. § 602(a)

---

9. 42 U.S.C. § 606(a) provides:

(a) The term "dependent child" means a needy child (1) who has been deprived of parental support or care by reason of the death, continued absence from the home, or physical or mental incapacity of a parent, and who is living with his father, mother, grandfather, grandmother, brother, sister, stepfather, stepmother, stepbrother, stepsister, uncle, aunt, first cousin, nephew, or niece, in a place of residence maintained by one or more of such relatives as his or their own home, and (2) who is (A) under the age of eighteen, or (B) under the age of twenty-one and (as determined by the State in accordance with standards prescribed by the Secretary) a student regularly attending a school, college, or university, or regularly attending a course of vocational or technical training designed to fit him for gainful employment.

10. In *Townsend* the Court wrote:

Thus, King v. Smith establishes that, at least in the absence of congressional authorization for the exclusion clearly evidenced from the Social Security Act or its legislative history, a state eligibility standard that excludes persons eligible for assistance under federal AFDC standards violates the Social Security Act and is therefore invalid under the Supremacy Clause. We recognize that HEW regulations seem to imply that States may to some extent vary eligibility requirements from federal standards. However, the principle that accords substantial weight to interpretation of a statute by the department entrusted with its administration is inapplicable insofar as those regulations are inconsistent with the requirement of § 402(a)(10) that aid be furnished "to *all eligible* individuals." (Emphasis supplied.) King v. Smith, 392 U.S., at 333 n. 34 [, 88 S.Ct., at 2141, 20 L.Ed.2d 1118].

404 U.S. 282, 286, 92 S.Ct. 502, 505, 30 L.Ed. 2d 448 (1971) (footnotes omitted).

11. *See, e. g.*, Wilson v. Weaver, 358 F.Supp. 1147 (N.D.Ill.1973); Green v. Stanton, 364 F.Supp. 123 (N.D.Ind.1973); Harris v. Mississippi, 363 F.Supp. 1293 (N.D.Miss.1973); Tillman v. Endsley, No. 73–1476–Civ.–CF (S.D.Fla., Oct. 1, 1973); Wisdom v. Norton, 372 F.Supp. 1190 (D.Conn.1974). Two district courts have held that a state's denial of AFDC benefits to the unborn is not invalid under the Supremacy Clause. Parks v. Harden, 354 F.Supp. 620 (N.D.Ga.1973); Mixon v. Keller, No. 73–111–Civ.–J–T (M.D.Fla., March 1, 1974).

11a. Eleven of the twelve dictionary citations contained in plaintiffs' brief to this court are additions later than 1958.

(7), (8) in computing the child's eligibility for assistance. Only a born child can be "deserted or abandoned by a parent." *See* 42 U.S.C. § 602(a)(11). Only a born child can be "neglect[ed], abuse[d] or exploit[ed]." *See* 42 U.S.C. § 602(a)(16).

Furthermore, Title IV provides a detailed scheme of regulation for which Congress has included various specific conditions on both eligibility and level of need for AFDC recipients. These conditions uniformly distinguish between different groups of *born* children.[12] None of the conditions, however, would serve to distinguish between classes of *unborn*.[13] Had Congress intended to include the unborn in the definition of "child," it is likely, particularly in view of the detailed distinctions made with respect to eligibility and level of need for born children, *see* Shea v. Vialpando, 416 U.S. 251, 94 S.Ct. 1746, 40 L.Ed.2d 120 (1974), that Congress would have addressed itself to level of need and eligibility factors specific to the unborn. For example, Congress might have addressed itself to the date the unborn becomes eligible or the differing levels of need depending on the age of the fetus. The absence of any reference to the problems of eligibility and need of the unborn is compelling evidence that Congress neither contemplated nor intended to include the unborn.

A review of the other titles of the Social Security Act also indicate that Congress did not intend AFDC payments to be made on behalf of the unborn. As the State points out in its brief:

> [The] view that the Social Security program was intended to provide money payments only from the moment of birth was evidenced by the fact that when Congress enacted the AFDC program through Title IV of the Social Security Act, it also enacted a separate program for "Maternal and Child Health Care" through Title V of the Act. C. 531, Title V, § 501, 49 Stat. 629. An examination of the hearings relating to the enactment of Title V shows that Congress was well aware of a need for an extensive program for prenatal care, particularly in the rural areas of the nation. Also, Congress was aware that long before 1935 countries such as Australia, Germany and France were providing "maternity allowances" to needy pregnant women in an attempt to reduce infant mortality and the risks of childbirth. See Hearings on S. 1130, Before the Senate Comm. on Finance, 1st Sess., 74th Cong., January 25, 1935. It is reasonable to assume therefore, that had Congress intended to provide direct payments to pregnant women, it would have made explicit provision for such payments in Title V. However, rather than follow the same course as that chosen by other countries, Congress chose, through the enactment of Title V to encourage education in public health and the establishment of prenatal clinics rather than to make direct payments to pregnant women or fetuses. No provision for maternity allowances was ever made in either the provisions relating to Maternal and Child Health Care or AFDC.

The only legislative history bearing on this issue brought to our attention are the remarks of Mr. Ellenbogen made in a

---

12. For example, the benefits available to a born child with other income or resources may be different from the benefits available to a born child without such additional income. 42 U.S.C. § 602(a)(7), (8). Law enforcement officials must be informed of the furnishing of AFDC aid to a child who has been "deserted or abandoned" but not with respect to a child who has not been so neglected. 42 U.S.C. § 602(a)(11).

13. For example, as unborns cannot have income or other resources, the level of need provision, 42 U.S.C. § 602(a)(7), (8), *supra* note 12, is inapplicable to the entire class of unborns. Similarly, as an unborn, absent abortion, cannot be "deserted or abandoned," the notification of law enforcement provision, 42 U.S.C. § 602(a)(11), *supra* note 12, is similarly inapplicable.

statement to Congress in 1935[14] and Congress' recent failure to enact committee proposals which would have expressly excluded eligibility for the unborn.[15] Neither appears to support the contention that Congress intended to include the unborn. Mr. Ellenbogen's remarks indicate that Congress intended that protection extend only *after*, not prior to, birth. Whether the recent Congressional activity regarding the unborn is helpful in determining Congressional intent is questionable. Congress' failure to enact the exclusion cannot be attributed to an intent to include this class, as none of the proposals relating to the AFDC program were enacted. *See* Mixon v. Keller, *supra*. At most, the failure to legislatively eliminate the optional policy evidences an awareness of and perhaps acquiescence in that *optional* policy;

it cannot properly be construed as evidence of an intent to require a *mandatory* program.

In view of the evidence of Congressional intent which indicates that the unborn were not included within the statutory definition of "dependent child," a state's denial of benefits to the unborn is consistent with the Social Security Act and valid.[16]

Proponents of the second rationale maintain that neither the Act nor its legislative history are helpful in determining Congressional intent regarding the unborn. Reliance is placed, however, on an HEW administrative policy permitting, at the option of the individual states, inclusion of the unborn in its AFDC program,[17] and the rule that:

[T]he construction of a statute by those charged with its execution should

14. In our modern society, social security in its true sense means the enactment of laws that will safeguard the fundamentals of life to every human being *from the time of birth until the time of death.*

&ast; &ast; &ast; &ast; &ast;

The child-welfare laws and public health measures which we pass should protect the child *from the day of his birth until he reaches maturity.*

&ast; &ast; &ast; &ast; &ast;

I visualize for the future social security laws which will accompany the individual from his cradle to his grave; *social security laws which will step in and watch over the child when it is born;* which will assure an education to every child according to his ability.

79 Cong.Rec. 7838, 7839 (Emphasis supplied).

15. Recognizing that HEW administratively expanded the Social Security Act by permitting states at their option to extend AFDC benefits on behalf of the unborn, the 92d Congress attempted to correct the situation by forcing HEW to eliminate even the options and compel compliance with the intent and language of the Act. Mixon v. Keller, *supra*.

The House Ways and Means Committee report on H.R. 1, H.R.Rep. No. 92–231, states at page 184:

Your committee wants to make clear that an unborn child would not be included in the definition of a child. This will preclude the practice, now used in the AFDC program in some States, of finding that

an unborn child does meet the definition, thereby establishing a "family" even before the child is born.

The Senate Finance Committee report, S. Rep.No.92–1230, states at page 108:

Regulations of the Department of Health, Education and Welfare *permit* Aid to Families with Dependent Children payments for a child who has not yet been born. The committee bill would make unborn children *ineligible* for AFDC.

(Emphasis supplied).

16. One might argue that even assuming that Congress did not originally intend to include the unborn within the statutory definition of "dependent child," Congressional acquiescence in the long standing HEW administrative policy of permitting inclusion of the unborn at the option of the state, *see* text *infra*, implicitly authorizes federal participation in state programs providing AFDC benefits to the unborn. *See* Norwegian Nitrogen Products Co. v. United States, 288 U.S. 294, 313, 53 S.Ct. 350, 77 L.Ed. 796 (1933). Even under this argument, however, a state's determination to exclude the unborn is not inconsistent with federal law, as Congress' acquiescence in HEW's inclusion of the unborn cannot be separated from its acquiescence in the *optional* nature of the HEW program.

17. 45 C.F.R. § 233.90(c)(2) Federal financial participation is available in:

&ast; &ast; &ast; &ast; &ast;

(ii) Payments with respect to an unborn child when the fact of pregnancy has been determined by medical diagnosis . . . .

be followed unless there are compelling indications that it is wrong, especially when Congress has refused to alter the administrative construction.

Red Lion Broadcasting Co. v. FCC, 395 U.S. 367, 381, 89 S.Ct. 1794, 1802, 23 L.Ed.2d 371 (1969). State programs that exclude the unborn are invalidated by treating separately the two features of the HEW policy. The interpretation of "dependent child" as including the unborn, on the one hand, is sanctioned. However, the HEW provisions that the states may vary from the interpretation, on the other hand, is disallowed.[18] The effect of these decisions is to *require* states to include the unborn.

Inasmuch as the statutory language and congressional intent not to include the unborn within the statutory definition of "dependent child" is clear, *see* text *supra,* I believe reliance on the HEW policy to include the unborn is misplaced. As the Supreme Court has recently stated:

> [T]he sound principle of according deference to administrative practice normally applies only where the relevant statutory language is unclear or susceptible of differing interpretations.

Shea v. Vialpando, 416 U.S. 251, 262 n. 11, 94 S.Ct. 1746, 1754 (1974).

Even assuming, however, that 42 U.S.C. § 606(a) is "unclear or susceptible of differing interpretations," and that the principle of deference to an administrative policy is applicable, I do not believe that this court can treat the inclusion and optionality features of the HEW program separately, sustaining one and invalidating the other. An examination of the HEW program indicates that if one feature of the program authorizing optional benefits to the unborn is without statutory authority and void, the appropriate course would be to invalidate the entire program, rather than to enforce it in piecemeal fashion.

HEW maintains, in its amicus curiae brief filed with the district court, that its program on behalf of the unborn was adopted under the Secretary's broad rule-making authority, 42 U.S.C. § 1302,[18a] for a very limited purpose. Federal financial participation is made available, pursuant to regulation, not because the unborn is statutorily eligible, but rather *in anticipation* of statutory eligibility, which, HEW concedes, occurs at birth. The extension of benefits prior to statutory eligibility is justified on the ground that

> [i]n addition to the prospective need for furnishings, layette and other items for the unborn child, the meeting of the mother's subsistence and health needs during pregnancy and at the time of birth may have a close relationship to the situation of the mother and child upon birth.[19]

---

18. *See, e. g.,* Alcala v. Burns, 494 F.2d 743 (8th Cir. 1974); Doe v. Lukhard, 363 F. Supp. 823 (E.D.Va.1973), *aff'd,* 493 F.2d 54 (4th Cir. 1974). These courts have held that HEW is without power to authorize states to exercise an option not to participate in the unborn child program.

18a. 42 U.S.C. § 1302 provides in part:
> [T]he Secretary of Health, Education, and Welfare . . . shall make and publish such rules and regulations, not inconsistent with this chapter, as may be necessary to the efficient administration of the functions . . . charged under this chapter.

19. HEW maintains that its optional program on behalf of the unborn is no different from other optional administrative programs in which federal participation is available al-

though at the time payments are made all the statutory elements of the definition of "dependent child" are not met. For example, under section 233.90(c)(2)(i), federally matched AFDC payments may begin up to 30 days before the child goes to live with the specified relative. Federal financial participation is made available because of "the close relationship of such situations to those specifically described in the statute. . . . [I]t can be anticipated that, where a child is coming to live with a relative under the statutory situation, expenditures related to that situation may be necessary, e. g., for additional household furnishings to accommodate the child, perhaps clothes, toys, schoolbooks or other items depending on the child's age and, as soon as the child arrives, food and other needs."

Not only is it left to state option whether or not to provide any benefits to the unborn but also, if the state elects to make payments, it is left to state option to decide at what point in relation to anticipated birth the payments should begin.

The consequence of invalidating only the "option" features of the program would be to require that the state extend benefits to all unborn from the date of medical determination of pregnancy. Such a result bears no relevance to HEW policy. It is unlikely that HEW intended to force this result upon the states. For example, a prospective mother would be entitled to obtain AFDC benefits for a substantial period and then decide to abort the fetus. The program was devised as an exercise of administrative discretion to cover a limited situation— the anticipation of statutory eligibility at birth. An examination of the HEW regulation and its purpose discloses the inseparability of the option feature from the inclusion feature. Should one aspect be invalidated, the entire program should fall.[20]

The Supreme Court trilogy, King v. Smith, 392 U.S. 309, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1968), Townsend v. Swank, 404 U.S. 282, 92 S.Ct. 502, 30 L.Ed.2d 448 (1971), and Carleson v. Remillard, 406 U.S. 598, 92 S.Ct. 1932, 32 L.Ed.2d 352 (1972), cited for the proposition that variances from federal eligibility standards must be clearly authorized by Congress, is not directly apposite. In *King, Townsend,* and *Re-*

*millard,* the Court construed § 606(a) of the Act and its legislative history to show that Congress intended to make a particular class eligible. The Court held that the state had the burden of proving Congressional intent to make benefits for those it deemed eligible available only at the option of the state. In this case, the statute and its legislative history are at best silent on the question of eligibility of the unborn. The only evidence of eligibility is the HEW administrative regulation which, by its own terms, makes benefits optional. Since the inclusion of the unborn is not mandatory by statute or regulation, the optional feature of the regulation remains unaffected by the trilogy.

The HEW policy of making state participation in a program optional is not without precedent. In extending the outer limits of eligibility to older age groups, Congress consistently made participation in the programs optional with the states rather than mandatory, as the Supreme Court recognized in Townsend v. Swank, *supra.* An optional extension of aid to the unborn is analogous to the situation described by the Court in *Townsend.*

Accordingly, I would affirm the action of the district court rejecting the plaintiffs' statutory claim, and vacate that portion of the district court's order addressed to the constitutional issue with directions to request the convening of a three-judge court.

Memorandum of United States as Amicus Curiae.

20. I do not reach the question of HEW's statutory authority to extend an option. *See* cases cited note 18, *supra.* Whether or not the feature is authorized, I do not believe a state's denial of benefits to the unborn conflicts with federal law. If the option is au-

thorized, the state's election not to participate in the HEW program is consistent with federal law. If the option is unauthorized, I believe, as I discuss in the text *supra,* that the entire HEW program must be invalidated. If the program is void, a state's denial of AFDC benefits to the unborn is not inconsistent with federal law.