Ruth PARKS, Individually and for all others similarly situated, Plaintiff-Appellant,

v.

Richard HARDEN, Individually and as the Commissioner of the Department of Human Resources, Defendant-Appellee.

Mrs. Alice L. HARRIS and Mrs. Mary E. Hood, Individually, on behalf of their unborn children, and on behalf of all others similarly situated, Plaintiffs-Appellees,

v.

MISSISSIPPI STATE DEPARTMENT OF PUBLIC WELFARE et al., etc., Defendants-Appellants.

Nos. 73–1855 and 73–3220.

United States Court of Appeals, Fifth Circuit.

Dec. 2, 1974.

Rehearing and Rehearing En Banc Denied March 4, 1975.

Ainsworth, Circuit Judge, filed dissenting opinion.

Steven Gottlieb, Alfred C. Kammer, II, Jay E. Loeb, Atlanta, Ga., for plaintiff-appellant.

Dorothy Y. Kirkley, Asst. Atty. Gen., of Ga., Arthur K. Bolton, Atty. Gen., of Ga., Harold N. Hill, Jr., Deputy Asst. Atty. Gen., Robert J. Castellani, Asst. Atty. Gen., Atlanta, Ga., for defendant-appellee.

A. F. Summer, Atty. Gen., William A. Allain, 1st Asst. Atty. Gen., Jack S. Parker, P. Roger Googe, Jr., Sp. Asst. Attys. Gen., Jackson, Miss., for defendants-appellants.

Mark H. Shenfield, West Point, Miss., Stanley L. Taylor, No. Miss. Rural Legal Services, Oxford, Miss., Barry H. Powell, Community Legal Services, Jackson, Miss., for plaintiffs-appellees.

Before WISDOM, AINSWORTH and GEE, Circuit Judges.

WISDOM, Circuit Judge:

These two class actions involving federal-state aid to mothers of unborn children require this Court to consider for the first time issues litigated in a number of other federal courts during the past two years: Does the failure of a state to provide benefits to mothers of unborn children under the joint federal and state Aid to Families with Dependent Children (AFDC) program contravene provisions of the Social Security Act? Does the Act deny to unborn children or their mothers the equal protection of the laws? The plaintiffs [1] would, of course, have us answer in the affirmative. They cite a series of decisions by the United States Supreme Court,[2] as well as the language of the Act itself, to demonstrate that unborn children are eligible individuals under the Act, and that to fail to provide benefits to them in the face of such statutory eligibility violates the Supremacy Clause. Straining at the traces imposed by Roe v. Wade, 1973, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147, Plaintiff Parks also urges that the denial of AFDC benefits to unborn children simply on the basis of their fetal status denies them the equal protection of the laws, or, at minimum, violates the right to equal protection of the plaintiff mothers.

The Attorneys General of Georgia and Mississippi, defendants in the two actions, respond in kind: there is nothing either in the language of the Social Security Act or its legislative history to indicate a Congressional intent to include unborn children in the AFDC program. Although the Department of Health, Education and Welfare (HEW) *permits* a state to make AFDC payments to expectant mothers, they argue, such benefits are clearly optional. In dismissing the constitutional argument, the State of Georgia cites Roe v. Wade and

---

1. In Parks v. Harden the class action plaintiff appealed; in Harris v. Mississippi the State Department of Public Welfare appealed.

2. King v. Smith, 1968, 392 U.S. 309, 88 S.Ct. 2128, 20 L.Ed.2d 1118; Townsend v. Swank. 1971, 404 U.S. 282, 92 S.Ct. 502, 30 L.Ed.2d 448; Carleson v. Remillard, 1972, 406 U.S. 598, 92 S.Ct. 1932, 32 L.Ed.2d 352.

concludes that since an unborn child is not a person within the meaning of the Fourteenth Amendment, "the State has created no classification which is subject to judicial scrutiny."

In these two cases the district courts reached opposite conclusions. In Parks v. Harden, the District Court for the Northern District of Georgia, concluding that an unborn child simply was not a child within the meaning of the Act, dismissed the cause of action and dissolved the temporary restraining order it had entered orally pending its decision on the merits.[3] 354 F.Supp. 620. On the other hand, the District Court for the Northern District of Mississippi held that unborn children were "eligible individuals" under the Act, and that Mississippi could not, therefore, deny them AFDC benefits. 363 F.Supp. 1293. Concur-

ring as we do with the latter reading of the applicable law, we affirm the judgment in No. 73–3220, Harris v. Mississippi State Department of Public Welfare, and reverse the judgment in No. 73–1855, Parks v. Harden.

I.

Before we address the substantive issues raised by these appeals, we consider several questions, "jurisdictional" in a broad sense, which are not directly raised by the parties here, but have concerned other district or circuit courts confronting the same issue we address today.[4] The first is an outgrowth of the holding in Roe v. Wade that "the word 'person,' as used in the Fourteenth Amendment, does not include the unborn." 410 U.S. at 158, 93 S.Ct. at 729, 35 L.Ed.2d at 180. Since we conclude

---

3. Although the constitutional questions outlined in the text are raised on appeal, they were not considered by the district court, since the parties stipulated their insubstantiality.

4. More than two dozen courts have considered the problem in one form or another. Four Courts of Appeals have reached the result we reach: Carver v. Hooker, 1 Cir. 1974, 501 F.2d 1244; Wilson v. Weaver, 7 Cir. 1974, 499 F.2d 155; Alcala v. Burns, 8 Cir. 1974, 494 F.2d 743, petition for cert. filed, 42 U.S.L.W. 3642 (May 15, 1974); Doe v. Lukhard, 4 Cir. 1974, 493 F.2d 54, petition for cert. filed, 42 U.S.L.W. 3667 (May 24, 1974). The Second Circuit has reached the opposite result. Wisdom v. Norton, 507 F.2d 750, 43 U.S.L.W. 2173 (Oct. 11, 1974), rev'g D.C., 372 F.Supp. 1190. The Third Circuit Court of Appeals has also entertained an appeal on the issue, but vacated and remanded the case for convocation of a three-judge court and did not reach the merits. Murrow v. Clifford, 3 Cir. 1974, 502 F.2d 1066.

In addition to the two district court decisions on appeal here, Harris v. Mississippi State Department of Public Welfare, N.D. Miss.1973, 363 F.Supp. 1293, and Parks v. Harden, N.D.Ga.1973, 354 F.Supp. 620, at least eighteen other district courts have considered the issue of AFDC and to unborn children on the merits. Four reached the conclusion arrived at in Parks v. Harden, and denied AFDC benefits to the unborn. Murrow v. Clifford, D.N.J. [Civ.Act. No. 114–73] (June 12, 1973) (letter memorandum), vacated and remanded, 502 F.2d 1066

(3 Cir. 1974); Mixon v. Keller, M.D.Fla. 1974, 372 F.Supp. 51; Poole v. Endsley, N.D.Fla.1974, 371 F.Supp. 1379; Geisler v. Endsley, N.D.Fla., [No. 74–3] (March 4, 1974).

The other fourteen district court decisions we have found have all held that states taking part in the AFDC program must provide benefits to mothers of unborn children. Topia v. Vowell, S.D.Tex. [Civ.Act. No. 73–B–169] (November 11, 1973); Tillman v. Endsley, S.D.Fla., [No. 73–1476—Civ—CF] (March 11, 1974); Jones v. Graham, D.Neb. [CV 73–L–235] (September 5, 1973); Morris v. Houston, W.D.Mich., [No. G250–73 Ca–5] (October 29, 1973) (temporary restraining order granted); Taylor v. Hill, W.D.N.C., 377 F.Supp. 495 (1974); Turner v. Shulims, W.D.Mo. [Civ.Act. No. 14CV 311–w–3] (1974) (preliminary injunction granted); Wisdom v. Norton, D.Conn.1974, 372 F.Supp. 1190, rev'd 507 F.2d 750; Carver v. Hooker, D.N.H.1973, 369 F.Supp. 204, aff'd, 501 F.2d 1244 [No. 74–1079] (1974); Whitfield v. Minter, D.Mass.1973, 368 F.Supp. 798; Stuart v. Canary, N.D.Ohio 1973, 367 F. Supp. 1343; Green v. Stanton, N.D.Ind.1973, 364 F.Supp. 123, aff'd, 499 F.2d 155, (7 Cir., 1974); Doe v. Lukhard, E.D.Va.1973, 363 F.Supp. 823, aff'd, 1974, 493 F.2d 54, petition for cert. filed, 42 U.S.L.W. 3667 (May 24, 1974) [No. 73–1763]; Alcala v. Burns, S.D.Iowa, 1973, 362 F.Supp. 180, aff'd 1974, 494 F.2d 743, petition for cert. filed, 42 U. S.L.W. 3642 (May 15, 1974) [No. 73–1708]; Wilson v. Weaver, N.D.Ill.1972, 358 F.Supp. 1147, aff'd, 7 Cir., 1974, 499 F.2d 155 [No. 73–1541].

that the plaintiffs are entitled to AFDC benefits under the Social Security Act, we need not reach the equal protection argument advanced by Parks on appeal. Yet *Roe's* denial of fetal personhood nonetheless must be taken into account.

■ An unborn child's lack of status as a "person" for Fourteenth Amendment purposes does not affect the status of an unborn child as a "child" within the language of the Act;[5] that a fetus is not constitutionally *entitled* as a person to claim certain benefits in no way affects the right or power of Congress to *extend* benefits to unborn children by appropriate legislation. The question for resolution here is whether Congress did so. See Carver v. Hooker, D.N.H. 1973, 369 F.Supp. 204, 210, n. 23, aff'd 1974, 501 F.2d 1244; Alcala v. Burns, S.D.Iowa, 1973, 362 F.Supp. 180, 186, aff'd, 1974, 494 F.2d 743, petition for cert. filed, 42 U.S.L.W. 3642 (U.S. May 15, 1974). Yet, at first blush, *Roe* might be thought to preclude even the statutory claim advanced by the plaintiffs under 42 U.S.C. § 1983, since Section 1983 requires that the "rights, privileges or immunities" of a "citizen of the United States or other *person* within the jurisdiction thereof" be abridged before there is a basis of liability for the deprivation. [Emphasis added].[6]

Reading the quoted passage from *Roe* together with the language cited above, at least one district court has concluded that "if an unborn is not a person under the Fourteenth Amendment[,] an unborn has no right of action under Section 1983 and [the] claim must fall." Poole v. Endsley, N.D.Fla.1974, 371 F.

Supp. 1379, 1382. Whatever the merits of extending *Roe's* reach to Section 1983 actions, it is not necessary to reach that question here, for it is the rights of the expectant mother, rather than those of the fetus, which are at issue. Alcala v. Burns, 362 F.Supp. at 186.

The references to the AFDC program in the history of the Act make it clear that the Congressional objective is to furnish aid to needy mothers. Originally known as "Aid to Dependent Children", 49 Stat. 627, the program's name was altered by a 1962 Social Security Act amendment to "Aid and Services to Needy Families with Children". Pub.L. 87–543, 42 U.S.C. § 601 (1970); see King v. Smith, 1968, 392 U.S. 309, 311 n. 1, 88 S.Ct. 2128, 2130, 20 L.Ed.2d 1118, 1122. And, currently, Part A of Title IV of the Act, which erects the AFDC structure and procedures, simply denominates its subject as "Aid to Families with Dependent Children". 42 U. S.C. § 601. One district court has evaded the clear import of this language, although in a constitutional rather than statutory context, by holding that the mother's rights under the AFDC program "are incidental to, and derived from, the statutory benefits conferred upon the children." Since the unborn child is not a person, the court reasoned, no benefits can be derived on its behalf by its mother, Murrow v. Clifford, D.N. J. [Civ.Act.No. 114–74] (letter memorandum, June 12, 1973, at 3), vacated and remanded for assignment to a three-judge court, 502 F.2d 1066 (3 Cir. 1974). Thus, the court concluded, Roe v. Wade precludes even the mother's benefits on equal protection grounds.

---

5. In an effort to prevent confusion, we shall refer to a child still carried by its mother as a "fetus" or an "unborn child". Children already born will be called just that, "born children" or "postpartum children". We intimate no opinion on the sensitive medical, theological, and philosophical questions involved in the debate over when life begins.

6. Section 1983 provides:
   Every person who, under color of any statute, ordiance, regulation, custom or usage,

of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proceeding for redress.

■ We do not find such reasoning persuasive, nor do we believe that Roe v. Wade can be used to support the view that the mother of an unborn child should be denied a cause of action under Section 1983. The definition in the Act of "aid to families with dependent children" makes it evident that Congress contemplated payments of AFDC benefits directly to the relative with whom a dependent child is living, to meet the relative's own needs:

> The term "aid to families with dependent children" means money payments *with respect* to . . . a dependent child or dependent children, and includes (1) money payments or medical care or any type of remedial care recognized under State law *to meet the needs of the relative with whom any dependent child is living* . . . .

42 U.S.C. § 606(b)(1) [emphasis added]. Under this language the rights of the mother are not derivative but direct. Although it is necessary for a relative to have an eligible dependent child living in the home for the relative to acquire eligibility, the existence of such a condition precedent cannot render the relative's rights "incidental" in the face of statutory language to the contrary. If AFDC payments must be made with respect to unborn as well as post-partum children, then, the expectant mother herself has a right to receive them and standing to assert that right under Section 1983. See Carver v. Hooker, 369 F.Supp. at 210; Murrow v. Clifford, 3 Cir. 1974, 502 F.2d 1066.

The second jurisdictional difficulty is raised by the Third Circuit's treatment of Murrow v. Clifford in which the Court of Appeals was presented with a determination that expectant mothers are *not* entitled to AFDC benefits under the Act. In *Murrow*, the class action plaintiffs brought their action for declaratory and injunctive relief on statutory and constitutional grounds, alleging first, that New Jersey's failure to authorize AFDC benefits with respect to unborn children conflicted with the Social Security Act and was therefore invalid under the Supremacy Clause, and second, that the state's refusal to provide the payments violated the mother's rights to the equal protection of the laws. Finding the Supremacy Clause claim to be without merit, the single district judge went on to adjudicate the equal protection claim, and again found against the plaintiffs. On appeal, the Third Circuit vacated the judgment and remanded the case, holding that the plaintiffs' constitutionally-grounded request for an injunction against a state regulation of statewide application could be considered only by a three-judge district court, and could be appealed only to the United States Supreme Court. See 28 U.S.C. §§ 2281, 1253.

The court also remanded the statutory Supremacy Clause claim,[7] because the interests of "sound judicial administration" dictated that it, too, be considered by the three-judge court. Although it had jurisdiction over the appeal from the district court's disposition of the statutory question,[8] the Court of Appeals reasoned, its decision affirming the district court would preclude consideration of the Supremacy Clause issue by the three-judge court, and compel it to decide the case on constitutional grounds. Such a result would contra-

---

7. In referring to the plaintiffs' contention that the challenged state policies are inconsistent with the Social Security Act and therefore invalid under the Supremacy Clause, we use the terms "statutory" or "Supremacy Clause" contention to differentiate it from the equal protection contention. In doing so, we do not mean to suggest that it is not constitutionally grounded. See Hagans v. Lavine, 1974, 415 U.S. 528, 533, 94

S.Ct. 1372, 1377 n. 5, 39 L.Ed.2d 577, 585-586.

8. The court viewed the statutory determination as an interlocutory appeal from the denial of an injunction and asserted it had jurisdiction under 28 U.S.C. § 1292(a)(1). The Fourth Circuit has suggested a similar approach, at least where the district court certified the interlocutory matter, Doe v. Lukhard, supra note 4, 493 F.2d at 59 n. 6.

vene the Supreme Court's clearly enunciated policy that, where possible, courts should resolve controversies on nonconstitutional grounds. E. g., Rosado v. Wyman, 1970, 397 U.S. 397, 402, 90 S. Ct. 1207, 1212, 25 L.Ed.2d 442, 450; Hagans v. Lavine, 1974, 415 U.S. 528, 547, 94 S.Ct. 1372, 1384, 39 L.Ed.2d 577, 594. Thus, the court concluded, a remand to the district court with directions to convene a three-judge panel was the only disposition consonant with sound judicial policy.

Yet because its decision was bottomed on considerations of judicial administration, the court of appeals limited its holding in *Murrow* so as not to include cases involving coincident statutory and constitutional claims in which the district court found the statutory claim to be meritorious:

> [I]t is improper for a single district judge to decide a supremacy clause claim *against the claimant* when it is pendent to a constitutional claim which must be decided by a three-judge district court. If he is not going to sustain the supremacy claim he should request the convening of a three-judge court and permit that court to pass upon the entire case.

502 F.2d at 1070 [emphasis added]. The rationale of this distinction is not complex. Should the district court hold *in favor* of the claimants on statutory grounds, the judgment may be appealed and affirmed on that basis, avoiding decision on the constitutional issue and, hence, the need for a three-judge court. A ruling *adverse* to the plaintiffs on the statutory ground by the single district judge, however, insures that the three-judge court which must be convened to consider the constitutional contention will be bound by the single judge's decision on the statutory issue and will be forced to reach and decide the constitutional claim. Thus, in order to preserve the three-judge court's flexibility to

reach a nonconstitutional result, a single district judge inclined to rule against the claimants ought not to rule at all. Much the same reasoning appears in dictum in a recent decision of the Fourth Circuit Court of Appeals, Doe v. Lukhard, 4 Cir. 1974, 493 F.2d 54, 59–60, petition for cert. filed, 42 U.S.L.W. 3667 (U.S. May 24, 1974). Although the court there upheld on statutory grounds the district court's grant of AFDC benefits to unborn children, it intimated that the entire controversy, in both its constitutional and statutory incarnations, would better have been referred to a three-judge court initially.[9] What we must decide, then, is whether the interests of "sound judicial administration" require a remand of either of the cases on appeal here.

We consider that the *Murrow-Doe* reasoning is not applicable to our controversy, and decline to follow it. This conclusion is a function of the strikingly different posture of the cases before us on appeal, since neither district court here reached any constitutional issue which could have required adjudication by a three-judge court. Thus we need not rest our affirmance of *Harris* or our reversal of *Parks* on constitutional grounds. In *Murrow*, the district court had reached and decided the plaintiff's request to enjoin a state practice on the basis of a constitutional contention which it was clearly without power to reach. In this setting, remand and convocation of a three-judge court were believed to be mandatory by the court of appeals majority, for consideration of the constitutional issue, if no other. To move from this position to one holding that the three-judge court ought to be able to decide both the statutory and constitutional claims was a very short step for the court.

■ Our cases present a far different situation, however. In *Harris*, the

9. The Fourth Circuit's admonition is a bit broader than the Third Circuit's, perhaps because only the latter court had the benefit of the Supreme Court's reaffirmation in Hagans v. Lavine, supra note 7, of the court's traditionally "constructive view of the three-judge court jurisdiction". 415 U.S. at 544, 94 S.Ct. at 1382, 39 L.Ed.2d at 591.

plaintiffs advanced no constitutional challenge at all, and in *Parks,* the parties considered the equal protection contention to be insubstantial for purposes of requiring a three-judge court. Although this conclusion is questionable in light of our holding that the rights involved here are those of the expectant mother rather than the unborn child, and the liberal substantiality test set out in Goosby v. Osser, 1973, 409 U.S. 512, 93 S.Ct. 854, 35 L.Ed.2d 36 and Hagans v. Lavine, supra,[10] it did insure that the constitutional claim was not considered by the district court. Since we reverse the district court's statutory decision and find for the plaintiffs without reaching the constitutional question, no claim requiring adjudication by a three-judge court, and direct appellate review by the Supreme Court need be decided. Accordingly, no remand is in order.

Moreover, remand for convocation of a three-judge court here would in no way serve the interests of sound judicial administration which so concerned the *Murrow* majority. Only *Parks* involved a constitutional question and only *Parks* could be remanded, since *Harris,* which involved no constitutional issue, is plainly properly here on appeal. Thus it is

our duty to decide it. To remand *Parks* with directions to request the convening of a three-judge court, while affirming *Harris,* would place us in the anomalous position of ordering that a three-judge court be convened to consider the constitutional issue in the face of binding precedent that the controversy can be resolved on a statutory basis. Such a result would pervert the intent of the three-judge court statutes and flout the very values *Murrow* espouses.

## II.

We now turn to the merits of the controversy, and necessarily, to the AFDC program itself. AFDC originated as "Aid to Dependent Children", one of three major categorical assistance plans provided for by the Social Security Act of 1935.[11] Although administered by each participating state, the program is largely financed by the federal government, on a matching fund basis. State participation in the program is essentially voluntary, but states which do elect to take part are required to submit an AFDC plan to HEW, for approval by the Secretary. So long as the state plans meet the requirements of the Act, the states have considerable latitude in

---

10. As the Court explained in *Goosby:*

Title 28 USC § 2281 [28 USCS § 2281] does not require the convening of a three-judge court when the constitutional attack upon the state statutes is insubstantial. "Constitutional insubstantiality" for this purpose has been equated with such concepts as "essentially fictitious," Bailey v. Patterson, 369 U.S., [31] at 33, [82 S.Ct. 549, at 551] 7 L.Ed.2d 512; "wholly insubstantial," ibid.; "obviously frivolous," Hannis Distilling Co. v. Baltimore, 216 U.S. 285, 288, 30 S.Ct. 326, 327, 54 L.Ed. 482 (1910); and "obviously without merit," Ex parte Poresky, 290 U.S. 30, 32, 54 S.Ct. 3, 4–5, 78 L.Ed. 152 (1933). The limiting words "wholly" and "obviously" have cogent legal significance. In the context of the effect of prior decisions upon the substantiality of constitutional claims, those words import that claims are constitutionally insubstantial only if the prior decisions inescapably render the claims frivolous; previous decisions that merely render claims of doubtful or questionable merit do not render

them insubstantial for the purposes of 28 U.S.C. § 2281 [28 U.S.C.A. § 2281]. A claim is insubstantial only if "its unsoundness so clearly results from the previous decisions of this court as to foreclose the subject and leave no room for the inference that the questions sought to be raised can be the subject of controversy." Ex parte Poresky, supra, at 32, [54 S.Ct. 3 at 4], 78 L.Ed. 152, quoting from Hannis Distilling Co. v. Baltimore, supra, 216 U.S. at 288, [30 S.Ct. 326, at 327], 54 L.Ed. 482; see also Levering & Garrigues Co. v. Morrin, 289 U.S. 103, 105–106, 53 S.Ct. 549, 550, 77 L.Ed. 1062 (1933); McGilvra v. Ross, 215 U.S. 70, 80, 30 S.Ct. 27, 31, 54 L.Ed. 95 (1909).

11. Today there are four. In addition to the AFDC, HEW administers Old Age Assistance (42 U.S.C. §§ 301–306), Aid to the Blind (42 U.S.C. §§ 1201–1206), and Aid for the Permanently and Totally Disabled (42 U.S.C. §§ 1351–1355). See Rosado v. Wyman, 1970, 397 U.S. 397, 408 n. 10, 90 S.Ct. 1207, 1215, 25 L.Ed.2d 442, 453.

setting the "standard of need" to be employed in determining eligibility for benefits, and the level of benefits paid to eligible individuals. Thus state-mandated dollar ceilings, percentage reductions in benefits, and similar elements are permissible under the Act and under HEW guidelines.[12] See, e. g., Hagans v. Lavine, 415 U.S. at 530, 94 S.Ct. at 1375–1376 n. 1, 39 L.Ed.2d at 583–584; Rosado v. Wyman, 397 U.S. at 407–408, 90 S.Ct. at 1215–1216, 25 L.Ed.2d at 453.

■ What a state may not do however, is to deny benefits to an entire class of individuals eligible under the Act. See 42 U.S.C. § 602(a)(10); King v. Smith, 392 U.S. at 333, 88 S.Ct. at 2141, 20 L.Ed.2d at 1134. Yet this is precisely the deprivation alleged by each of the plaintiffs in her complaint before the district court. Both Harris and Parks argue on behalf of their respective classes that an unborn child is a "dependent child" within the meaning of Section 406(a) of the Act (42 U.S.C. § 606(a)), and that expectant mothers are therefore "eligible" individuals who may not be denied benefits under the Act. The states, citing HEW regulations, rejoin that although federal monies are made available for the payment of AFDC benefits with respect to unborn children, the unborn child aspect of the program is not a requirement but an option, enforceable only in those nineteen jurisdictions which have elected to exercise it. To resolve the controversy we look first to the Act itself, and then to three Supreme Court decisions for aid to our statutory reading.

■■ There are two key sections to which the plaintiffs pinion their argu-

ments. The first, Section 402(a)(10) of the Act, 42 U.S.C. § 602(a)(10) provides:

> a) A State plan for aid and services to needy families with children *must* . . .
>
> . . . . . .
>
> (10) *provide*, effective July 1, 1951, that all individuals wishing to make application for aid to families with dependent children shall have opportunity to do so, and *that aid to families* with dependent children shall be furnished *with reasonable promptness to all eligible individuals.*

Failure to comply with this section of the Act will render a state ineligible to participate in the program, thus barring it from the receipt of matching federal funds. See 42 U.S.C. § 604(a). Moreover, state regulations contrary to the Act's provision are invalid under the Supremacy Clause.[13] It is apparent then, that if unborn children or their mothers are "eligible individuals" within this section, a participating state may not deny them AFDC benefits. To determine the eligibility of the unborn and their mothers, however, we again look to the Act, since it is undisputed that federal, rather than state standards determine eligibility. See, e. g., King v. Smith, 392 U.S. at 317, 88 S. Ct. 2128; Lopez v. Vowell, 5 Cir. 1973, 471 F.2d 690, 693. Since payments are authorized only with respect to "needy dependent children and the parents or relatives with whom they are living," 42 U.S.C. § 601, this translates into an inquiry whether an unborn child is a "dependent child" for AFDC purposes.

---

12. The history and structure of the AFDC program have been summarized elsewhere. See, e. g., Hagans v. Lavine, supra note 7; Rosado v. Wyman, supra note 11; King v. Smith, supra note 2.

13. Article VI, Clause 2, of the Constitution provides:
    This Constitution and the Laws of the United States which shall be made in Pur-

suance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.

On its face, however, the Act does not appear to be helpful. Section 406(a) provides:

> When used in this part—
>
> (a) The term "dependent child" means a needy child (1) who has been deprived of parental support or care by reason of the death, continued absence from the home, or physical or mental incapacity of a parent, and who is living with his father, mother, grandfather, grandmother, brother, sister, stepfather, stepmother, stepbrother, stepsister, uncle, aunt, first cousin, nephew, or niece, in a place of residence maintained by one or more of such relatives as his or their own home, and (2) who is (A) under the age of eighteen, or (B) under the age of twenty-one and (as determined by the State in accordance with standards prescribed by the Secretary) a student regularly attending a school, college, or university, or regularly attending a course of vocational or technical training designed to fit him for gainful employment;

One district court has read this language as "clear on its face" and held that it excludes fetuses.[14] Like most courts which have considered the section,[15] we do not believe this definition resolves the issue. A "fetus" *could* of course be "needy", could be deprived of parental—or more specifically, paternal—support, and is obviously "under the age of eighteen." Unfortunately, as all parties here admit, the legislative history is opaque. No Congressional intent to include or exclude the unborn is apparent.[16] Lacking legislative guidance, the parties here turn to their dictionaries, citing contrary definitions of "child" and the axiom of statutory construction that words should be given their commonly understood meaning.[17] Yet such arguments only reinforce the conviction that the term "child" can be defined either to include or to exclude the unborn. Conceding a dearth of guidance from legislative history, logic, or lexicon, the defendants would have us deny AFDC benefits to these plaintiffs, because we can discern no congressional intent to *include* them. The Supreme Court, however, has delineated a different test for construing the AFDC provisions, and in applying it, we conclude that the plaintiff must prevail.

### III.

A proper vantage for viewing the contentions here can only be had from atop a tripod of Supreme Court decisions: King v. Smith, 1968, 392 U.S. 309, 88 S. Ct. 2128, 20 L.Ed.2d 1118; Townsend v. Swank, 1971, 404 U.S. 282, 92 S.Ct. 502, 30 L.Ed.2d 448 and Carleson v. Remillard, 1972, 406 U.S. 598, 92 S.Ct. 1932, 32 L.Ed.2d 352. In each of these cases, a state attempt to limit or preclude the payment of benefits to an individual otherwise eligible under the Social Security Act, was struck down as inconsistent with the Act's provisions, and hence invalid under the Supremacy Clause. In

---

14. Mixon v. Keller, supra note 4, 372 F. Supp. at 51, 54.

15. See, e. g., Alcala v. Burns, supra note 4, 362 F.Supp. at 184; Carver v. Hooker, supra note 4, 369 F.Supp. at 212.

16. Although in the course of debate on the original Act at least one representative made an oblique reference to the desirability of protecting children "from the time of birth", we agree with Chief Judge Coffin, writing for the First Circuit, that there is no evidence to suggest that Congress as a whole enacted the legislation with any such intent. Carver v. Hooker, 1 Cir. 1974, 501 F.2d 1244, [No. 74–1079], quoting 79 Cong.Rec. 7839 (1945) (Statement of Mr. Ellenhogen).

17. Thus Parks cites Webster's Seventh New Collegiate Dictionary which gives as the first definition of "child", "an unborn or recently born human being". The State of Georgia in its brief insists that it is the second definition of "child" in Webster's New International Dictionary, Second Edition, which is appropriate:

    "(2) a young person of either sex . . . ." And, at oral argument, the Attorney General of Mississippi cited yet another "old dictionary" in his office as defining "child" in a manner so as to exclude fetuses. Such a definitional duel proves nothing, of course, save that either side can find some support for its position in "common usage."

*King*, the Court invalidated an Alabama regulation which denied AFDC benefits to otherwise eligible dependent children whose mothers "cohabited" with any able-bodied man. Such a policy, the Court held, is in conflict with 42 U.S.C. § 606(a). In *Townsend* an Illinois plan denying benefits to needy children eighteen to twenty-one years of age who attended college, but granting funds to children of the same age attending high school or vocational school, was struck down as violative of Section 406(a)(2)(B) of the Act. 42 U.S.C. § 606(a)(2)(B). In *Carleson*, the last leg of the tripod, the Supreme Court held that California's attempt to deny AFDC benefits to "military enlistees" under the "continued absence from the home" provision of 42 U.S.C. § 602(a) was in conflict with that section and consequently invalid.

More important than the individual state regulations struck down, however, is the common rationale running through all three cases, a principle of construction for the AFDC provisions which has become known as the *King-Townsend* test:

> Thus, King v. Smith establishes that, at least in the absence of congressional authorization for the exclusion clearly evidenced from the Social Security Act or its legislative history, a state eligibility standard that excludes persons eligible for assistance, under federal AFDC standards violates the Social Security Act and is therefore invalid under the Supremecy Clause. We recognize that HEW regulations seem to imply that States may to some extent vary eligibility requirements from federal standards. However, the principle that accords substantial

weight to interpretation of a statute by the department entrusted with its administration is inapplicable insofar as those regulations are inconsistent with the requirement of § 402(a)(10) that aid be furnished "to *all eligible* individuals."

Townsend v. Swank, 404 U.S. at 286, 92 S.Ct. at 505. (footnotes omitted) (emphasis in Townsend). The Supreme Court has, therefore, established a two-step standard by which any state exclusion may be judged. First, looking to the Act itself, we must decide whether the statutory language furnishes a basis for eligibility. Second, if facial eligibility is established, we must examine the statute itself and plumb its legislative history, to determine whether Congress intended to exclude the class to which the state would deny benefits. If no Congressional authorization for exclusion can be found, the state standard is in conflict with the Act, and is invalid under the Supremacy Clause. We do not understand the defendants here to argue that the statute or its legislative history evidences any Congressional intent to exclude the unborn. Our research has disclosed none.[18] Thus the single issue for resolution may be simply put: Is an unborn child an "eligible individual" under the Social Security Act?

Answering this question might at first be thought to return to our earlier definitional dilemma. We need not re-address that conundrum ever, since HEW itself, through one of its regulations permits payments of AFDC benefits to expectant mothers "with respect to an unborn child when the fact of pregnancy has been established by medical diagnosis." [19] 45 CFR § 233.90

---

18. See note 16.

19. Section 233.90(c)(2) provides:
   (2) Federal financial participation is available in:
   (i) Initial payments made on behalf of a child who goes to live with a relative specified in section 406(a)(1) of the Social Security Act within 30 days of the receipt of the first payment, provided payments are not made for a concurrent peri-

od for the same child in the home of another relative or as AFDC–FC;
   (ii) Payments with respect to an unborn child when the fact of pregnancy has been determined by medical diagnosis;
   (iii) Payments made for the entire month in the course of which a child leaves the home of a specified relative, provided payments are not made for a concurrent period for the same child in

(c)(2)(ii). Such payments have been authorized since at least 1946 when the Public Assistance Administration, HEW's predecessor agency, altered its "Handbook" to permit Wisconsin to secure matching funds for AFDC payments to expectant mothers. Handbook of Public Assistance Administration, Part IV, Section 3412 (1946).[20] The plaintiffs argue that the impact of such a regulation is obvious. By authorizing payment of AFDC funds to expectant mothers with respect to their unborn children, HEW has necessarily, if tacitly, recognized that an "unborn child" is a "dependent child" within the Act, and hence "eligible" under federal standards for AFDC benefits. When read in light of the "venerable principle" that great weight should be given the construction of a statute by those charged with its administration, Red Lion Broadcasting Co. v. F. C. C., 1969, 395 U.S. 367, 381, 89 S.Ct. 1794, 1801, 23 L.Ed.2d 371, 384, the plaintiffs conclude, the HEW regulation resolves the "eligibility" portion of the King-Townsend test in favor of the plaintiffs.

The defendants, and HEW itself,[21] however, resist this reading of the regulation and its impact on the statute. They contend, in an argument found persuasive by the District Court in Parks v. Harden, 354 F.Supp. at 623, that there is a distinction in the regulations themselves, which makes § 233.90(c)(2)(ii) clearly optional. Section 233.90(c) entitled "Federal Financial Participation" is divided into two subjects. The first,

Section 233.90(c)(i), discusses various terms which appear in section 406(a) of the Act, 42 U.S.C. § 606(a). Although the HEW brief is less than clear on the point, at least Georgia concedes that any state plan which sought to alter these "interpretations" of § 406(a)'s standards for eligibility would be invalid. See Parks v. Harden, 354 F.Supp. at 623. Section 233.90(c)(2), however, in the words of the brief for the State of Georgia contains "optional provision[s] . . . which also permit payment to persons *not otherwise eligible under the AFDC program*[s] for purposes which HEW has determined to be compatible with the overall purposes of the Social Security Act." (Emphasis in brief). Thus through Section 290.33(c)(2)(ii), HEW extends AFDC benefits to unborn children and expectant mothers at the option of each state despite the fact that they are ineligible under the Act. Bolstering this assertion of non-eligibility, the defendants stress that it is in Title V of the Act, 42 U.S.C. §§ 701–715 which deals with maternal and child health, rather than in Title IV, Part A, 42 U.S. C. §§ 601–610, the AFDC provision, that Congress expressed its concern for proper prenatal and infant care. Since expectant mothers and unborn children are provided for in Title V, they argue, they are not included in Title IV. Moreover, many of the AFDC provisions in the Act only make sense if applied to postpartum children.[22] Thus, they conclude, neither a fair reading of the Act nor of the HEW regulations can prompt fetal eligibility, so the search for a congres-

---

the home of another relative or as AFDC–FC; and

(iv) Payments made to persons acting for relatives specified in section 406(a)(1) of the Act in emergency situations that deprive the child of the care of the relative through whom he has been receiving aid, for a temporary period necessary to make and carry out plans for the child's continuing care and support.

(3) Federal financial participation (at the 50 percent rate) is available in any expenses incurred in establishing eligibility for AFDC, including expenses incident to obtaining necessary information to deter-

mine the existence of incapacity of a parent or pregnancy of a mother. [36 FR 3868, Feb. 27, 1971; 38 FR 26916, Sept. 27, 1973].

20. A more detailed discussion of the origin of the authorization of payments with respect to the unborn may be found in Doe v. Lukhard, supra note 4, 363 F.Supp. at 829.

21. HEW's views were expressed in an amicus brief submitted to the district court in Wilson v. Weaver, supra note 4, and adopted in a letter to this panel.

22. See, e. g., 42 U.S.C. §§ 602(a)(7), (8), (11), (13), (15), (16).

sional "intent to exclude" mandated by *King-Townsend,* and Carleson need never be undertaken.

██ We are compelled to disagree. To answer the last contentions first, it scarcely need be said that the attention Congress has given to mothers and children in Title V of the Act necessarily shows no purpose to ignore them in Title IV. Moreover, the fact that certain of the Act's provisions can sensibly be applied only to a child who is born does not necessarily exclude the unborn from the Act's ambit. And, most importantly, HEW's contention that its regulation authorizes optional payment to "technically ineligible" recipients cannot withstand close scrutiny. Either unborn children are eligible or they are not. If they are eligible, HEW has acted properly in permitting payments with respect to the unborn and under the *King-Townsend* standard no state may declare expectant mothers and their fetuses ineligible. If this class is *in*eligible, however, then HEW has no power to *allow* the benefits, and in doing so, it has acted *ultra vires.* This is the difficulty with the defendants' reading of the Act and regulation. The Act may not be rigid, but it is *not* so elastic that HEW can stretch its language to cover individuals not intended by Congress to be eligible.

We hold that HEW has recognized that the unborn are eligible and that such a determination is a reasonable construction of the Act. This is so for several reasons. First, payments to expectant mothers are consistent with the purposes of the Act to encourag[e]

the care of dependent children in their own homes or in the homes of relatives by enabling each State to furnish financial assistance and rehabilitation and other services, as far as practicable under the conditions in such State, to needy dependent children and the parents or relatives with whom they are living to help maintain and strengthen family life and to help such parents or relatives to attain or retain capability for the maximum self-support and personal independence consistent with the maintenance of continuing parental care and protection . . .

42 U.S.C. § 601. It cannot be doubted that proper prenatal care is vital to the physical and mental health of the child, and an unborn child deprived of such care may reasonably be said to be as "needy" and "dependent" as a child born into similar circumstances.[23] Moreover, Congress appears to have recognized the status of the fetus as at least apparently eligible for benefits. During the second session of the Ninety-Second Congress, resolutions were introduced in both Houses proposing that the AFDC provisions of the Act be amended so as to specifically exclude the unborn. See H. R.Rep. No. 92–231, 92nd Cong.2d Sess. 184 (1972); S.Rep. No. 92–1230, 92nd Cong.Sess. 108 (1972), U.S.Code Cong. & Admin.News, p. 4989. Both resolutions were defeated. Although some courts have read the rejection of these amendments as sanctioning the current HEW practice of making benefits to expectant mothers optional,[24] we, like our First Circuit brothers, believe that Congressional consideration of these measures at minimum establishes its belief that unborn children are currently eligible under the Act "and that only by amending its language can their status as eligible individuals be altered."[25] See Carver v. Hooker, 501 F.2d 1244; Wilson v. Weaver, 358 F.Supp. at 1155.

Finally, our conviction that the Act's purpose and recent legislative history es-

---

23. Several district courts agree. E. g., Green v. Stanton, supra note 4, 364 F.Supp. at 126; Stuart v. Canary, 367 F.Supp. at 1346; Parks v. Harden, 354 F.Supp. at 622, 626.

24. See, e. g., Mixon v. Keller, supra note 4, 372 F.Supp. at 55; Whitfield v. Minter, 368 F.Supp. at 803.

25. See Stuart v. Canary, supra note 4, 367 F.Supp. at 1344; Wilson v. Weaver, 358 F. Supp. at 1155.

tablish fetal eligibility is not undercut by our obligation to defer to the construction given the Act by HEW, the agency charged with its administration. Although HEW interprets the Act as allowing "optional" payments with respect to the unborn, "the principle that accords substantial weight to interpretation of a statute by the department entrusted with its administration is inapplicable insofar as those regulations are inconsistent with the requirement of § 402(a)(10) that aid be furnished 'to all eligible individuals'." (Emphasis by the Court in *Townsend*.) Townsend v. Swank, 404 U.S. at 286, 92 S.Ct. at 505, 30 L.Ed.2d at 453.

■■ In sum, then, we conclude that the *King-Townsend* test must be applied, as the court properly did in *Harris*, and failed to do in *Parks*. Since we do not believe that HEW acted *ultra vires* in permitting AFDC benefits to be paid to expectant mothers, we hold that unborn children are eligible individuals under the Act as HEW's payment of funds in their behalf recognizes. 45 C.F.R. § 233.90(c)(2)(ii). This clears the first hurdle of the *King-Townsend* standard and since it is patent that there is no evidence that Congress intended to exclude the unborn, the second is cleared as well. Thus, the practices of the states of Georgia and Mississippi denying AFDC benefit to expectant mothers strictly on the basis of the fetal status of their children contravenes the Social Security Act of 1935, and is therefore violative of the Supremacy Clause of the United States Constitution.

For these reasons, the judgment of the district court in No. 73–1855, Parks v. Harden, is reversed and that in No. 73–3220, Harris v. Mississippi is affirmed.

AINSWORTH, Circuit Judge (dissenting):

Regretfully, I must dissent though I am aware that the majority opinion follows the weight of authority in other circuits. The majority arrives at a socially attractive conclusion, but it is a conclusion which the Congress and state legislatures should more properly reach. In pursuing what seems just, the majority not only unduly legislates by judicial fiat but also encumbers state and federal governments with difficult and complex burdens.

Initially, I express my agreement with the majority's conclusion that Goosby v. Osser, 409 U.S. 512, 93 S.Ct. 854, 35 L. Ed.2d 36 (1973), and Hagans v. Lavine, 415 U.S. 528, 94 S.Ct. 1372, 1381–1382, 39 L.Ed.2d 577 (1974), allowed the district court in *Parks* to exercise pendent jurisdiction over the statutory claim, related as it was to the equal protection issue. *See also* Edelman v. Jordan, 415 U.S. 651, 94 S.Ct. 1347, 1351 n. 1, 39 L. Ed.2d 662 (1974). It appears, however, that while the equal protection claim was not "wholly insubstantial," it had little prospect of ultimate success. *Cf.* Dandridge v. Williams, 397 U.S. 471, 487, 90 S.Ct. 1153, 1162, 25 L.Ed.2d 491 (1970). Though it cannot be said that the district court abused its discretion in recognizing and adjudicating the pendent statutory claim, as a matter of sound judicial policy courts might decline to hear matters the sole jurisdictional basis for which is a constitutional claim of dubious merit. *Cf.* Hagans v. Lavine, supra, 415 U.S. at 550, 94 S.Ct. at 1386 (Powell, J., dissenting).[1]

In its discussion of the merits, the majority gives little deference to HEW's basis for and interpretation of its own

---

1. In its opinion, *ante* p. 867, the majority opinion states that *Harris* is "plainly properly here on appeal." I am not as certain. Plaintiff asserted, and the district court accepted, jurisdiction based only on a statutory claim under the Social Security Act, urging that 42 U.S.C. § 1983 states a federal cause of action and that 28 U.S.C. § 1343 provides jurisdiction. Recent opinions indicate that the latter conclusion may be erroneous. As

Judge Friendly has stated, "The Social Security Act is not an 'Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States,' 28 U.S.C. § 1343(3), so as to remove the jurisdictional amount requirement for the statutory claims." Aguayo v. Richardson, 2 Cir., 1973, 473 F.2d 1090, 1101, cert. denied, 414 U.S. 1146, 94 S.Ct. 900, 39 L.Ed.2d 101 (1974). For other holdings

regulation, 45 C.F.R. § 233.90(c)(2)(ii), by which the extension of AFDC payments to expectant mothers is made optional for states participating in the program. The majority concedes that the statutory terms themselves provide little interpretative assistance, and that the legislative history is even less helpful. In such circumstances, HEW's interpretation should be given considerable deference. As the Supreme Court said of HEW regulations relating to the AFDC program,

> [HEW's construction] is entitled to weight as the attempt of an experienced agency to harmonize an obscure enactment with the basic structure of a program it administers.

Rosado v. Wyman, 397 U.S. 397, 415, 90 S.Ct. 1207, 1219, 25 L.Ed.2d 442 (1970).

Moreover, HEW's position that grants to expectant mothers are not mandatory *has been consistent and unchallenged for some 30 years.* In such cases of long-standing construction of a statute by those charged with its administration, the agency's construction should be followed "unless there are compelling indications that it is wrong." Red Lion Broadcasting Co. v. F. C. C., 395 U.S. 367, 381, 89 S.Ct. 1794, 1802, 23 L.Ed.2d 371 (1969); *see* Trafficante v. Metropolitan Life Ins. Co., 409 U.S. 205, 210, 93 S.Ct. 364, 367, 34 L.Ed.2d 415 (1972); Zemel v. Rusk, 381 U.S. 1, 11–12, 85 S.Ct. 1271, 1278, 14 L.Ed.2d 179 (1965); Udall v. Tallman, 380 U.S. 1, 16–18, 85 S.Ct. 792, 801–802, 13 L.Ed.2d 616 (1965). We have no compelling indications that HEW's position here is wrong.[2]

that sections 1343(3) and (4) do not confer federal courts with jurisdiction over statutory claims not involving personal liberties or civil rights, see Lopez v. Luginbill, 10 Cir., 1973, 483 F.2d 486, 488–489, cert. denied, 415 U.S. 927, 94 S.Ct. 1436, 39 L.Ed.2d 485 (1974); McCall v. Shapiro, 2 Cir., 1969, 416 F.2d 246, 249–250; *see also* Note, Federal Jurisdiction over Challenges to State Welfare Programs, 72 Colum.L.Rev. 1404, 1421–1428 (1972). Since less than $10,000 is in controversy, we likewise do not have federal question jurisdiction under 28 U.S.C. § 1331(a). The Supreme Court has acknowledged that the question whether a statutory claim under the Social Security Act can derive jurisdiction from section 1343 is as yet unresolved. Hagans v. Lavine, 415 U.S. 528, 94 S.Ct. 1372, 1377 n. 5, 39 L.Ed. 2d 577 (1974); *see* Rosado v. Wyman, 397 U.S. 397, 405 n. 7, 90 S.Ct. 1207, 1214 n. 7, 25 L.Ed.2d 442 (1970); *cf.* Doe v. Lukhard, 4 Cir., 1974, 493 F.2d 54, 56–57, petition for cert. filed, 42 U.S.L.W. 3667 (May 24, 1974) [No. 73–1763]. Thus, it is at least uncertain whether *Harris* is properly before us. In view of the majority's disposition of *Parks*, however, which is properly here, it is not necessary to decide this difficult but important jurisdictional issue. Nor is it necessary to dismiss *Harris*, for plaintiffs could merely bring the same suit, appended to a colorable equal protection claim as in *Parks*, and prevail on the merits on the basis of *Parks*.

2. The majority recognizes that HEW's interpretation of the Social Security Act is due great deference. *Ante,* p. 872. Indeed, in the absence of other sources of guidance, the majority relies almost exclusively on HEW's regulations. Inexplicably, however, that reliance does not extend to HEW's long-held interpretation that the Act permits, as its regulation provides, optional funding for non-mandatory programs giving aid to unborn children and their mothers.

Deferring to HEW on the question whether the Act contemplates optional aid does not run afoul of the Supreme Court's command that "the principle that accords substantial weight to interpretation of a statute by the department entrusted with its administration is inapplicable insofar as those regulations are inconsistent with the requirement of § 402(a)(10) that aid be furnished 'to all eligible individuals'." Townsend v. Swank, 404 U.S. at 286, 92 S.Ct. at 505. If the regulations were read as properly providing optional aid to individuals not technically eligible for AFDC assistance, no "eligible individuals" under the Act would be denied benefits. The majority may properly assert that the agency's interpretation disregards the holding in *Townsend* only by first declining to defer to HEW on the issue of whether optional aid is permissible under the Act. Having thus narrowed the inquiry, the majority then "defers" to what it sees as HEW's interpretation of what is mandatory under the Act—despite the fact that HEW insists its regulation is not designed to explain what is mandatory under the Act. *See* note 7, *infra.* Either the agency's interpretation is to be respected or it is not. The bitter must be taken with the sweet.

The majority opinion does not reach the difficult question whether the unborn are children within the meaning of the Social Security Act. Since my disagreement is with the majority's interpretation of the regulation in question, it is unnecessary in this dissent to reach the complex issue of whether a fetus is a "child."

HEW's own regulation is the basic support for the majority's conclusion that the unborn are eligible beneficiaries of AFDC payments. The optional grants to the unborn, it is reasoned, are either grants to "eligible individuals" and thus mandatory under the *King-Townsend-Carleson* troika, or they are grants to ineligible individuals and thus illegal and *ultra vires*. The trap is both seductive and logical, but not unavoidable. An examination of the regulations in question will show that HEW's position[3] is neither mandated by nor inconsistent with the Social Security Act. If this is so, the states and HEW are not oblitated to extend AFDC payments for the benefit of the unborn.

The regulation in question is analogous to other provisions by which HEW makes funding available to states under the AFDC program on a non-mandatory basis. HEW has promulgated four different provisions under 45 C.F.R. § 233.-90(c)(2) which make payments optionally available in instances where technical eligibility is not present. Under section 233.90(c)(2)(i),[4] AFDC payments can be made to an eligible relative up to 30 days before the child is placed in the care of that relative. Since at the time a relative receives such payments he is not caring for a "dependent child," the payments are obviously beyond the statutory parameters. Just as obviously, however, such payments will enable the relative to purchase necessary food, clothing, toys and household items so that when the child does come into the relative's custody, proper care can begin immediately. Under section 233.-90(c)(2)(iii),[5] a relative can receive payments for an entire month, even if the child leaves the eligible family situation sometime during the same month. Again, technical eligibility may be lost with the child's departure, but not absent are the obligations to pay for major expenses, such as rent and furniture, incurred in part for the child's benefit. In addition, the regulation avoids administrative problems inherent in attempting to allocate payments for less than a month. Section 233.90(c)(2)(iv)[6] allows payments to be made to persons who are not eligible relatives or caretakers specified in 42 U.S.C. § 606(a),

3. As both the majority opinion and this dissent indicate, the Department of Health, Education and Welfare will be directly affected by the decision of the Court. The agency's practice over a long period of time and its view of its own regulation are of great importance. HEW was not a party in this case, however, nor did it appear before the Court. We were made aware of HEW's position by the submission to us of its *amicus curiae* brief in Wilson v. Weaver, N.D.Ill., 1972, 358 F.Supp. 1147, aff'd 7 Cir., 1974, 499 F.2d 155.

4. 45 C.F.R. § 233.90(c)(2)(i) provides:
    (2) Federal participation is available in:
    (i) Initial payments made on behalf of a child who goes to live with a relative specified in section 406(a)(1) of the Social Security Act within 30 days of the receipt of the first payment, provided payments are not made for a concurrent period for the same child in the home of another relative or as AFDC–FC . . . .

5. 45 C.F.R. § 233.90(c)(2)(iii) provides:
    (2) Federal participation is available in:

    (iii) Payments made for the entire month in the course of which a child leaves the home of a specified relative, provided payments are not made for a concurrent period for the same child in the home of another relative or as AFDC–FC
    . . . .

6. 45 C.F.R. § 233.90(c)(2)(iv) provides:
    (2) Federal participation is available in:
    (iv) Payments made to persons acting for relatives specified in section 406(a)(1) of the Act in emergency situations that deprive the child of the care of the relative through whom he had been receiving aid, for a temporary period necessary to make and carry out plans for the child's continuing care and support.

but who are providing temporary care to a child in emergency situations while other plans are being made for the child's care and support. Providing assistance to a technically ineligible person, consistent with the purposes of AFDC benefits, could not be more manifest.

In this context, the rationale of providing optional funding for payments to pregnant women allowed by section 233.-90(c)(2)(ii), the regulation involved in this case, becomes more clear. By providing payments to women before the child is born, states can more effectively guarantee the provision of needed assistance immediately to post-partum children, those children who are clearly eligible for assistance under the Act. The other provisions allowing optional payments, sections 233.90(c)(2)(i), (iii) and (iv), are not statements that certain classes are "eligible individuals" under the Act; the fact of ineligibility is quite clear. Similarly, the optional extension in this case of "payments with respect to an unborn child" is not a determination that the unborn are "eligible individuals," and should not in fairness be so construed. The payments authorized by sections 233.90(c)(2)(i) through (iv) are justifiable because of their close and direct relationship to circumstances in which individuals will soon qualify for

AFDC payments and will then be entitled to receive assistance under the Act. Moreover, the provisions for optional assistance are *totally consistent* with the statutory purpose of the AFDC program, even though such assistance is not specifically contemplated by the language of the statute. These regulations, which are well-considered and beneficial provisions, are valid under 42 U.S.C. § 1302, which gives the Secretary of Health, Education and Welfare the power to "make and publish such rules and regulations, not inconsistent with this chapter [which includes the Social Security Act], as may be necessary to the efficient administration of the functions with which [he] is charged . . . ." The regulation in this case thus does not have to be regarded either as a statement that the unborn are "eligible individuals" under the Act or as a provision that is illegal and *ultra vires*. Rather, the provision can be accepted for what it is: an attempt to aid those not otherwise eligible for AFDC payments in order to assure more effective assistance to those who *are* eligible. Thus there is no proper basis for the majority's contention that HEW has indirectly declared the unborn to be "eligible individuals" properly the beneficiaries of AFDC payments.[7]

---

7. HEW's position on the relationship between the existence of its regulation permitting optional assistance to the unborn and the majority's conclusion that the regulation implicitly means the unborn are "eligible individuals" within the meaning of the Social Security Act is set forth in HEW's *amicus* brief in Wilson v. Weaver, *supra*, as follows:

Subdivision (ii) [45 C.F.R. § 233.-90(c)(2)(ii)], relating to the unborn child, is of a piece with the rest of section 233.-90(c)(2). When a child is expected but not yet born, and on the child's birth the statutory definition of "dependent child" will be met, federal financial participation is available, at state option, in anticipation of the birth of the child. The situation is an extension of that in subdivision (i), where a child is coming to live with a specified relative within 30 days. In addition to the prospective need for furnishings, layette and other items for the unborn child, the meeting of the mother's subsistence and health needs during preg-

nancy and at the time of birth may have a close relationship to the situation of the mother and child upon birth. . . .

In this context, therefore, the availability of federal financial participation in respect to an unborn child *depends on the exercise of federal regulatory authority*, in relation to state-administered or supervised programs which vary from state to state, that gives options to the states, which the vast majority of the states have not chosen to exercise, to obtain federal matching for payments in certain limited and time-related situations where, however, the statutory definitions are not met at the time of payment. *But, in our view, neither the statute nor the regulations contemplate the imposition of mandatory coverage of unborn children upon the majority of the states which do not cover such children.*

HEW Brief, *supra* note 3, at 15–16 (emphasis added).

Viewed in the context of HEW's purpose in promulgating the regulation in question, HEW's conclusion that the unborn are not mandatorily eligible AFDC recipients is both logical and plausible. Nonetheless, the majority relies on this regulation, and this reliance is the basic support for a result which, it is conceded, cannot be derived from the legislative history or indicia of congressional intent.[8] The reasonableness of the long-standing regulation and HEW's interpretation thereof, combined with the total lack of compelling reasons for ignoring this rational position, seem to me to magnify the error.

Two further points need brief statement. First, the majority's approach will unduly limit flexibility in the administration of the AFDC program. This program has been described by the Supreme Court as a "scheme of cooperative federalism." *E. g.*, King v. Smith, 392 U.S. 309, 316, 88 S.Ct. 2128, 2133, 20 L.Ed.2d 1118 (1968); Jefferson v. Hackney, 406 U.S. 535, 542, 92 S.Ct. 1724, 1729, 32 L.Ed.2d 285 (1972). The majority rationale, if logically followed, would cause the presently optional aid provisions in 45 C.F.R. §§ 233.-90(c)(2)(i), (iii) and (iv), to which we have already adverted, to be declared either mandatory on the states or *ultra vires*. Not only would such a result be unfortunately erroneous, but it would harm the flexibility in the working relationship of the states and HEW, and impede new attempts to facilitate the delivery of assistance to those eligible for AFDC payments.

Finally, the majority's conclusion will present intricate and complex administrative problems to the states. The decision will allow a woman verifiably in her first month of pregnancy to begin receiving AFDC payments. But according to the principles in Roe v. Wade, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973), and Doe v. Bolton, 410 U.S. 179, 93 S.Ct. 739, 35 L.Ed.2d 201 (1973), the same woman, up through the sixth month of pregnancy or until "viability," is entitled to abort the fetus subject only to regulation "reasonably relate[d] to the preservation and protection of maternal health." Roe v. Wade, *supra*, 410 U.S. at 163, 93 S.Ct. at 732. There are logical inconsistencies prevalent in a situation where it is held that Congress was so concerned with the well-being of fetuses that it provided for financial assistance to the unborn, but, notwithstanding such congressional concern, the mother of a fetus can abort her "eligible individual" at her whim. This perplexing paradox is necessarily presented by today's decision, and it should be noted that this situation is brought about solely as the result of judicial decisions. This serves only to reinforce our conclusion that the decision herein to mandate assistance to the unborn is one which should be left to the states of Mississippi and Georgia, or to the Congress of the United States.

I therefore am unable to join the majority opinion and respectfully dissent.

---

8. The majority suggests by its statement that Congress "defeated" resolutions which would specifically exclude the unborn, that Congress has recognized the eligibility of the unborn. What in fact happened was that the House of Representatives passed an amendment "to *make clear* that an unborn child would not be included in the definition of a child." H.R.Rep.No.92–231, 92d Cong., 2d Sess. 184 (1972), U.S.Code Cong. & Admin.News, p. 5170. The Senate Report approved and the Senate passed the same amendment, quoting with approval the House Report's language. S.Rep.No.92–1230, 92d Cong., 2d Sess. 467 (1972) ("only children who have actually been born" are eligible for AFDC). The provision did not pass, however, as all welfare provisions were "bottled up" by the failure to agree on the Administration's subsequently abandoned Family Assistance Program. If any inference can properly be drawn from this action, it would be that Congress was of the strong opinion that the unborn are presently excluded from AFDC payments, and Congress wanted to correct the actions of HEW and the courts. At any rate, this congressional action does clearly indicate that the majority's decision is totally at odds with what Congress considers sound policy.